## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **RZB FINANCE LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 6603 |
| | ) | |
| vs. | ) | Judge Milton I. Shadur |
| | ) | |
| **PYRAMID STONE MFG., INC. and** | ) | Magistrate Judge Susan E. Cox |
| **11 S. EISENHOWER, LLC** | ) | |
| | ) | |
| Defendants. | ) | |

## RZB FINANCE LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, RZB Finance LLC ("RZB"), by and through its undersigned attorneys, hereby moves this Court to enter a temporary restraining order in favor of RZB and against Defendant 11 S. Eisenhower, LLC ("Landlord"), forbidding Landlord from denying RZB access to 11 S. Eisenhower Lane, Lombard, Illinois 60148 (the "Premises") (the "Motion"). The Motion has been presented to the Court on an emergency basis to allow the Court to rule on the Motion contemporaneously with ruling on Plaintiff's Motion for Order of Replevin (Filed November 21, 2007, Docket Entry #7). In support of this Motion, RZB hereby submits the Declaration of Christoph Hoedl (the "Hoedl Declaration"), a Group Vice President of RZB (attached hereto as Exhibit 1).

## FACTS

1.     On or about June 19, 2006, RZB, as lender, and Pyramid Stone and Stone Warehouse, LLC ("Stone Warehouse") as borrowers (collectively, Pyramid Stone and Stone Warehouse are referred to herein as the "Borrowers"), entered into a Loan and Security

Agreement (as amended, modified and supplemented from time to time, the "Loan Agreement") and certain related agreements.  A true and correct copy of the Loan Agreement is attached to the Hoedl Declaration as Group Exhibit A.[1]

2.  Pursuant to Section 6 of the Loan Agreement, the Borrowers granted RZB a continuing security interest in the following:

> (a) all Accounts and all Goods whose sale, lease or other disposition by such Borrower has given rise to Accounts and have been returned to or repossessed or stopped in transit by such Borrower; (b) all Chattel Paper, Instruments, Documents, and General Intangibles (including without limitation all patents, patent applications, trademarks, trademark applications, trade names, trade secrets, goodwill, copyrights, registrations, licenses, software, franchises, customer lists, tax refund claims, claims against carriers and shippers, guarantee claims, contracts rights, payment intangibles, security interests, security deposits, and any rights to indemnification); (c) all Inventory and other Goods, including without limitation Equipment, vehicles and Fixtures; (d) all Investment Property; (e) all Deposit Accounts, bank accounts, deposits and cash; (f) all Letter-of-Credit Rights; (g) Commercial Tort Claims listed on Exhibit H hereto; (h) any other property of Borrower now or hereafter in the possession, custody or control of Lender or any agent or any Affiliate of Lender or any participant with Lender in the Loans for any purpose (whether for safekeeping, deposit, collection, custody, pledge, transmission or otherwise); and (i) all additions and accessions to, substitutions for, and replacements, products and proceeds of the foregoing property, including without limitation proceeds of all insurance policies insuring the foregoing property, and all of such Borrower's books and records relating to any of the foregoing and to such Borrower's business.

(hereinafter, the "Collateral").  True and correct copies of the UCC-1 Financing Statements filed by RZB to perfect its first priority security interest in the Collateral are attached to the Hoedl Declaration as Exhibit B.

---

[1]    On or about September 29, 2007, Stone Warehouse executed a Trust Agreement and Assignment for the Benefit of Creditors (the "Stone Warehouse ABC"), thereby transferring all of its assets to a Trustee-Assignee.  Consequently, RZB seeks no relief with respect to Stone Warehouse, at the present time.

3.     Pursuant to the Loan Agreement, upon an Event of Default, RZB is entitled, inter alia, to take possession of and sell the Collateral and to keep the proceeds as a credit to the amounts owed under the Loan Agreement.

4.     Pursuant to a lease dated April 21, 2003, Landlord leased the Premises to Pyramid Stone.  In addition, Landlord executed a Landlord Lien Waiver, dated June 16, 2006, pursuant to which Landlord agreed, among other things: to waive and release any claims it may have against the Collateral, that the Collateral was and shall remain personal property and not become part of the Premises and is not fixtures; and that RZB may enter and remain on the Premises at any time to exercise its rights under the Loan Agreement (the "Landlord's Waiver").  A true and correct copy of the Landlord's Waiver is attached to the Hoedl Declaration as Exhibit C.

5.     Pursuant to the Landlord's Waiver, Landlord acknowledged, among other things, that:

(i)     Landlord has received notice that [Pyramid Stone] has entered into certain financing arrangements (the "**Financing Arrangements**") with [RZB], whereby [Pyramid Stone] has granted to [RZB] a security interest in all personal property of [Pyramid Stone] (the "**Collateral**"), all or part of which may be located upon or affixed to the Premises and (ii) that [RZB's] security interest in the Collateral pursuant to the Financing Agreements is superior to any lien, right or claim of title of any nature which Landlord now has or hereafter may have or assert in or to the Collateral… (emphasis in the original).

(Exhibit C, Landlord's Waiver, paragraph (a)).

6.     In the Landlord's Waiver, Landlord also agreed that:

. . . [RZB] may enter and remain on the Premises at any time to assemble and remove the Collateral in the exercise of its rights and remedies arising from the aforesaid Financing Arrangements;. . ."

(Exhibit C, Landlord's Waiver, paragraph (d)).

7. Pursuant to the Loan Agreement, RZB extended a secured line of credit in the amount of $5,000,000 to the Borrowers. RZB first disbursed funds pursuant to the Loan Agreement on or about June 19, 2006.

8. On or about May 30, 2007, RZB sent a letter to the Borrowers notifying them that they were in default of their obligations under the Loan Agreement and that RZB was reserving its rights to exercise any of the rights and remedies available under the Loan Agreement and under the law, as well as demanding that the Borrowers, among other things, disclose the required financial information under the Loan Agreement (the "May 30 Letter"). A true and correct copy of the May 30 Letter is attached to the Hoedl Declaration as Exhibit D.

9. On or about October 19, 2007, the Borrowers and RZB entered into a Third Amendment and Forbearance Agreement ("Forbearance Agreement"), wherein the Borrowers acknowledged that they were in default of their obligations under the Loan Agreement. In the Forbearance Agreement, RZB agreed to forebear from exercising its rights and remedies under the Loan Agreement only until October 26, 2007. A true and correct copy of the Forbearance Agreement is included in Group Exhibit A attached to the Hoedl Declaration.

10. On or about October 26, 2007, the Borrowers and RZB entered into a First Amendment to Forbearance Agreement ("First Amendment to Forbearance Agreement"). In the First Amendment to Forbearance Agreement, the Borrowers again acknowledged that they were in default of their obligations under the Loan Agreement. In the First Amendment to Forbearance Agreement, RZB agreed to forbear from exercising its rights and remedies under the Loan Agreement only until November 5, 2007. A true and

correct copy of the First Amendment to Forbearance Agreement is included in Group Exhibit A attached to the Hoedl Declaration.

11.    On November 6, 2007, RZB sent a letter to the Borrowers notifying them that they were in default under the Loan Agreement and that under the terms of the Loan Agreement, RZB was declaring all amounts owing by Borrowers to RZB to be immediately due and payable (the "November 6 Letter").  A true and correct copy of the November 6 Letter is attached to the Hoedl Declaration as Exhibit E.

12.    As of November 6, 2007, the Borrowers acknowledged that their indebtedness to RZB pursuant to the Loan Agreement stood at not less than $2,466,460.87, plus accrued and accruing interest, fees and other costs.

13.    On November 14, 2007, RZB sent a letter to Pyramid Stone asking that Pyramid Stone agree, among other things, to immediately abandon and surrender possession of the Collateral to RZB (the "November 14 Letter").  A true and correct copy of the November 14 Letter is attached to the Hoedl Declaration as Exhibit F.

14.    As of the filing of the Complaint and this Motion, Borrowers have not repaid their outstanding indebtedness to RZB, nor has Pyramid Stone turned over the Collateral to RZB.

15.    By letter dated November 20, 2007, RZB demanded from Landlord an acknowledgement of RZB's right to enter the Premises (the "November 20 Letter").  A true and correct copy of the November 20 Letter is attached to the Hoedl Declaration as Exhibit G.

16.    Landlord has not provided its acknowledgement and acceptance of the terms of the November 20 Letter.

17.     As of November 28, 2007, at the address of 11 S. Eisenhower in Lombard, Illinois, where Pyramid Stone and Landlord are located, the property did not appear occupied and no one was at that location. A true and correct copy of the Affidavit of Non-Service is attached hereto as Exhibit 2.

18.     Pursuant to the Landlord's Waiver, RZB has an absolute right to immediately enter and remain on the Premises at any time to assemble and remove the Collateral.

19.     Landlord has refused to acknowledge RZB's right to access to the Premises pursuant to the Landlord's Waiver.

Accordingly, RZB seeks this Court's intervention to temporarily restrain Landlord from denying RZB access to the Premises.

## ARGUMENT

### A.     *Introduction.*

RZB has a clear and compelling right to a temporary restraining order forbidding Landlord from denying RZB access to the Premises. Pyramid Stone is in default of its obligations under the Loan Agreement. Consequently, RZB is entitled to possession of the Collateral. Landlord agreed to allow RZB access to the Premises to assemble and remove the Collateral. Landlord waived and released any liens it may have in the Collateral. Accordingly, RZB has a reasonable likelihood of succeeding on its claim that Landlord cannot deny it access to the Premises for purposes of assembling and removing the Collateral. Moreover, Landlord's denial of access to the Premises would cause irreparable harm to RZB since RZB would then be unable to take possession of and liquidate the Collateral, and RZB would incur additional financial losses as a result. Restraining Landlord

from denying RZB access to the Premises would in no way harm the public interest, but would instead serve the public interest in the enforcement of valid contracts. Therefore, a temporary restraining order prohibiting Landlord from denying RZB access to the Premises should be granted.

### B.    Requirements and Standard for Temporary Restraining Order.

The requirements for a TRO are the same as for a preliminary injunction. *Amoroso-Levato v. Batavia School District 101,* No. 06 C 2601,  2006 WL 3343776, at * 1 (N.D. Ill. Nov. 15, 2006). To obtain a TRO, a movant must demonstrate:  (1) a reasonable likelihood of success on the merits of its claims; (2) an inadequate remedy at law; (3) a threat of irreparable harm which outweighs the potential harm to the respondent if the injunction is granted; and (4) that an injunction will not harm the public interest. *Michael v. The City of Granite City, I11.,* No. 06-CV-01-WDS, 2006 WL 44176, at *2 (S.D. Ill. Jan. 9, 2006).

In considering these elements, courts traditionally employ a "sliding scale" approach: "The greater the likelihood of success on the merits, the less irreparable harm is necessary for an injunction [or TRO] to issue." *Gateway Eastern Ry. Co. v. Terminal R. R. Ass 'n of St. Louis, 35* F.3d 1134, 1137 (7th Cir. 1994).  "This sliding scale approach is not mathematical in nature," but permits the district courts to weigh the competing interests and order the appropriate relief.  *Caterpillar Inc. v. Walt Disney Co.,* 287 F. Supp. 2d 913, 916 (C.D. Ill. 2003).

Finally, and significantly, it is the threat of harm - not actual harm - that warrants redress by injunction.  *Peoria Day Surgery Center v. OSF Healthcare System,* No. 06-1263, 2007 WL 178296, at *4 (C.D. Ill. Jan. 19, 2007).  Indeed, as the Court in *Peoria Day* reasoned, "the purpose of the injunctive relief is to prevent wrongs reasonably

apprehended in the future." *Id.* Accordingly, a movant "need not wait for the threatened harm to occur before seeking judicial assistance." *Id.*

        C.      ***RZB Satisfies the Requirements for Entry of a Temporary Restraining Order.***

RZB has a strong likelihood of prevailing on the merits of its Declaratory Judgment action. The Landlord's Waiver makes clear that Landlord has waived any liens against the Collateral and has agreed to allow RZB access to the Premises to take possession of the Collateral. RZB clearly has a reasonable likelihood of success on the merits.

Monetary damages are inadequate to compensate RZB. First, there is a significant risk that Pyramid Stone will go into liquidation and be unable to satisfy any monetary judgment RZB obtains against Pyramid Stone. This significant risk is demonstrated by the fact that Pyramid Stone has requested numerous amendments and forbearances to the Loan Agreement, has not paid its outstanding indebtedness nor turned over its Collateral in spite of repeated demands by RZB, and now appears to have shut down its business. *(See* Hoedl Declaration, Exh. 1, ¶¶ 10, 11, 12, 13, 14, 16 and 19.) Pyramid Stone has already defaulted on its obligations to RZB under the Loan Agreement and owes RZB in excess of $2,466,460. Such inability to satisfy a monetary judgment makes a damages remedy inadequate. *See Monfardini v. Quinlan,* No. 02 C 4284, 2003 WL 21384642 (N.D. Ill. June 13, 2003) (citing defendant's potential or actual insolvency as a "'standard ground' for demonstrating that an award of damages is inadequate); *see also Roland Machinery Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386 (7th Cir. 1984) (stating the risk that defendant cannot satisfy a monetary judgment because a defendant may become insolvent before final judgment and collection makes a damages remedy inadequate).

RZB will suffer more harm if the requested preliminary injunction is not granted then the potential harm Landlord will suffer if the injunction is granted. RZB is entitled to take possession of and sell its Collateral. Without access to the Collateral, RZB will be unable to realize any value from the Collateral and thereby attempt to recover at least some portion of the millions of dollars Pyramid Stone owes RZB. By contrast, Landlord has waived any liens it may have in the Collateral and has agreed to allow RZB access to the Premises, "provided that [RZB] shall be responsible for repairing any damage to the Premises caused by [RZB's] removal of the Collateral from the Premises." RZB is prepared to provide a bond, in an appropriate amount, to cover the cost of any damage to the premises caused by RZB's removal of the Collateral. Consequently, Landlord will suffer no harm if the Motion is granted.

Finally, entry of a temporary restraining order prohibiting Landlord from denying RZB access to the Premises would not disserve the public interest. On the contrary, an injunction that enforces a valid contract serves the public's interest. See *Brown & Brown, Inc. v. Ali,* No. 07 C 2893, 2007 WL 1953374, at *9 (N.D. Ill. June 25, 2007) ("Courts in this District have recognized that the public interest is served by enforcing valid contracts.")

WHEREFORE, for the foregoing reasons, RZB respectfully requests that this Court enter a temporary restraining order forbidding Landlord or anyone acting in concert with Landlord from denying, RZB access to the Premises at any time, in order for RZB to assemble and remove the Collateral, pending further Order of this Court.

Dated:  November 30, 2007

Respectfully Submitted,


/s/ William C. Meyers
One of Its Attorneys

William C. Meyers
David E. Morrison
Mary E. Anderson
GOLDBERG KOHN BELL BLACK
 ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois  60603
(312) 201-4000

*Attorneys for RZB Finance LLC*

## <u>CERTIFICATE OF SERVICE</u>

        The undersigned, an attorney, certifies that on November 30, 2007, he caused a copy of **RZB Finance LLC's Motion for Temporary Restraining Order** to be served via Hand Delivery before the hour of 8:30 a.m., and on November 29, 2007 on the eve of filing he caused a copy to be served via electronic mail, upon the following:

| | |
|---|---|
| Pyramid Stone Mfg, Inc. | 11 S. Eisenhower, LLC |
| c/o Mitchell Roth, Registered Agent | c/o Mitchell Roth, Registered Agent |
| 191 N. Wacker Drive | 191 N. Wacker Drive |
| Suite 1800 | Suite 1800 |
| Chicago, IL 60606 | Chicago, IL 60606 |

                        /s/ William C. Meyers
                        William C. Meyers