# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RZB FINANCE LLC, | ) |
| Plaintiff, | ) No. 07 C 6603 |
| vs. | ) Judge Milton I. Shadur |
| PYRAMID STONE MFG., INC. and 11 S. EISENHOWER, LLC | ) Magistrate Judge Susan E. Cox |
| Defendants. | ) |

## DECLARATION OF CHRISTOPH HOEDL

I, Christoph Hoedl, pursuant to 28 U.S.C. § 1746, declare under the penalty of perjury as follows:

1. I am currently employed as a Group Vice President of RZB Finance LLC ("RZB"). My responsibilities include managing RZB's asset-based lending group, which includes the asset-based loan that is the subject of the above-captioned lawsuit. I have personal knowledge of the matters set forth herein, and could and would testify competently thereto if called as a witness in this matter.

2. RZB is a Delaware limited liability company, with its principal place of business in New York, New York. The sole member of RZB is Raiffeisen Zentralbank Österreich AG, an Austrian corporation.

3. On or about June 19, 2006, RZB, as lender, and Pyramid Stone Mfg., Inc. ("Pyramid Stone") and Stone Warehouse, LLC ("Stone Warehouse") (collectively the "Borrowers") executed a Loan and Security Agreement (as amended, modified and supplemented from time to time, the "Loan Agreement") and certain related agreements,

pursuant to which RZB extended a secured line of credit in the amount of $5,000,000 to the Borrowers. A true and correct copy of the Loan Agreement is attached hereto as Group Exhibit A.[1]

    4.    To secure its performance under the Loan Agreement, the Borrowers granted RZB a continuing security interest in the following:

> (a) all Accounts and all Goods whose sale, lease or other disposition by such Borrower has given rise to Accounts and have been returned to or repossessed or stopped in transit by such Borrower; (b) all Chattel Paper, Instruments, Documents, and General Intangibles (including without limitation all patents, patent applications, trademarks, trademark applications, trade names, trade secrets, goodwill, copyrights, registrations, licenses, software, franchises, customer lists, tax refund claims, claims against carriers and shippers, guarantee claims, contracts rights, payment intangibles, security interests, security deposits, and any rights to indemnification); (c) all Inventory and other Goods, including without limitation Equipment, vehicles and Fixtures; (d) all Investment Property; (e) all Deposit Accounts, bank accounts, deposits and cash; (f) all Letter-of-Credit Rights; (g) Commercial Tort Claims listed on Exhibit H hereto; (h) any other property of Borrower now or hereafter in the possession, custody or control of Lender or any agent or any Affiliate of Lender or any participant with Lender in the Loans for any purpose (whether for safekeeping, deposit, collection, custody, pledge, transmission or otherwise); and (i) all additions and accessions to, substitutions for, and replacements, products and proceeds of the foregoing property, including without limitation proceeds of all insurance policies insuring the foregoing property, and all of such Borrower's books and records relating to any of the foregoing and to such Borrower's business.

(hereinafter, the "Collateral"). True and correct copies of the UCC-1 Financing Statements filed by RZB to perfect its first priority security interest in the Collateral are attached hereto as Exhibit B.

---

[1] On or about September 29, 2007, Stone Warehouse executed a Trust Agreement and Assignment for the Benefit of Creditors (the "Stone Warehouse ABC"), thereby transferring all of its assets to a Trustee-Assignee. Consequently, RZB seeks no relief with respect to Stone Warehouse, at the present time.

5.  Pursuant to the Loan Agreement, upon an Event of Default, RZB is entitled, inter alia, to take possession of and sell the Collateral and keep the proceeds as a credit to the amounts owed under the Loan Agreement.

6.  Pursuant to a lease dated April 21, 2003, 11 S. Eisenhower, LLC ("Landlord") leased the Premises to Pyramid Stone. In addition, Landlord executed a Landlord Lien Waiver, dated June 16, 2006, pursuant to which Landlord agreed, among other things: to waive and release any claims it may have against the Collateral, that the Collateral was and shall remain personal property and not become part of the Premises and is not fixtures; and that RZB may enter and remain on the Premises at any time to exercise its rights under the Loan Agreement (the "Landlord's Waiver"). A true and correct copy of the Landlord's Waiver is attached hereto as Exhibit C.

7.  Pursuant to the Landlord's Waiver, Landlord acknowledged, among other things, that:

> (i)  Landlord has received notice that [Pyramid Stone] has entered into certain financing arrangements (the "**Financing Arrangements**") with [RZB], whereby [Pyramid Stone] has granted to [RZB] a security interest in all personal property of [Pyramid Stone] (the "**Collateral**"), all or part of which may be located upon or affixed to the Premises and (ii) that [RZB's] security interest in the Collateral pursuant to the Financing Agreements is superior to any lien, right or claim of title of any nature which Landlord now has or hereafter may have or assert in or to the Collateral... (emphasis in the original).

(Exhibit C, Landlord's Waiver, paragraph (a)).

8.  In the Landlord's Waiver, Landlord also agreed that:

> ... [RZB] may enter and remain on the Premises at any time to assemble and remove the Collateral in the exercise of its rights and remedies arising from the aforesaid Financing Arrangements;..."

(Exhibit C, Landlord's Waiver, paragraph (d)).

9. RZB first disbursed funds pursuant to the Loan Agreement to the Borrowers on or about June 19, 2006.

10. On or about May 30, 2007, RZB sent a letter to the Borrowers notifying them that they were in default under the Loan Agreement and that RZB was reserving its rights to exercise any of the rights and remedies available under the Loan Agreement and under the law, as well as demanding that the Borrowers, among other things, disclose the required financial information under the Loan Agreement (the "May 30 Letter"). A true and correct copy of the May 30 Letter is attached hereto as Exhibit D.

11. On or about October 19, 2007, the Borrowers and RZB entered into a Third Amendment and Forbearance Agreement ("Forbearance Agreement"), wherein the Borrowers acknowledged that they were in default of their obligations under the Loan Agreement. In the Forbearance Agreement, RZB agreed to forebear from exercising its rights and remedies under the Loan Agreement only until October 26, 2007. A true and correct copy of the Forbearance Agreement is included in Group Exhibit A attached hereto.

12. On or about October 26, 2007, the Borrowers and RZB entered into a First Amendment to Forbearance Agreement ("First Amendment to Forbearance Agreement"). In the First Amendment to Forbearance Agreement, the Borrowers again acknowledged that they were in default of their obligations under the Loan Agreement, and RZB agreed to forbear from exercising its rights and remedies under the Loan Agreement only until November 5, 2007. A true and correct copy of the First Amendment to Forbearance Agreement is included in Group Exhibit A attached hereto.

13. On or about November 6, 2007, RZB sent a letter to the Borrowers notifying them that they were in default under the Loan Agreement and that under the terms

of the Loan Agreement, RZB was declaring all amounts owing by Borrowers to RZB to be immediately due and payable (the "November 6 Letter"). A true and correct copy of the November 6 letter is attached hereto as Exhibit E.

14. As of November 6, 2007, the Borrowers acknowledged that their indebtedness to RZB pursuant to the Loan Agreement stood at not less than $2,466,460.87, plus accrued and accruing interest, fees and other costs.

15. On November 14, 2007, RZB sent a letter to Pyramid Stone asking that Pyramid Stone agree, among other things, to immediately abandon and surrender possession of the Collateral to RZB (the "November 14 Letter"). A true and correct copy of the November 14 Letter is attached hereto as Exhibit F.

16. Borrowers have not repaid their outstanding indebtedness to RZB, nor has Pyramid Stone turned over the Collateral to RZB.

17. By letter dated November 20, 2007, RZB demanded from Landlord an acknowledgement of RZB's right to enter the Premises (the "November 20 Letter"). A true and correct copy of the November 20 Letter is attached hereto as Exhibit G.

18. Landlord has not provided its acknowledgement and acceptance of the terms of the November 20 Letter.

19. Pursuant to the Landlord's Waiver, RZB has an absolute right to immediately enter and remain on the Premises at any time to assemble and remove the Collateral.

20. Landlord has refused to acknowledge RZB's right to access to the Premises pursuant to the Landlord's Waiver.

21. I declare under the penalties of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on this 29 th day of November, 2007.

_____
CHRISTOPH HOEDL

-6-