# EXHIBIT C

## Permitted Liens

| | Borrower | Filing No. | Filing Date | Secured Party | Collateral |
|---|---|---|---|---|---|
| 1. | Stone Warehouse, LLC | 009735887 | 04/15/05 | First Personal Bank | water filtration equipment |
| 2. | Stone Warehouse, LLC | 010135745 | 08/29/05 | First Premier Capital, LLC | leased equipment |
| 3. | Pyramid Stone Mfg., Inc. | 003836936 | 04/20/98 Continued: 11/18/02 | Stearns Bank NA | leased equipment |
| 4. | Pyramid Stone Mfg., Inc. | 004463842 | 1/19/01 | Toyota Financial Services | Vehicle |
| 5. | Pyramid Stone Mfg., Inc. | 004473022 | 12/10/01 | Toyota Financial Services | Vehicle |
| 6. | Pyramid Stone Mfg., Inc. | 005199859 | 05/06/02 | Toyota Financial Services | Vehicle |
| 7. | Pyramid Stone Mfg., Inc. | 005356377 | 06/04/02 | Toyota Financial Services | Vehicle |
| 8. | Pyramid Stone Mfg., Inc. | 007560036 | 09/16/03 | Wells Fargo Bank Minnesota, N.A. | Certain Equipment pursuant to lease agreement |
| 9. | Pyramid Stone Mfg., Inc. | 007629117 | 10/01/03 | First Federal Leasing | Polishing machine |
| 10. | Pyramid Stone Mfg., Inc. | 008626014 | 05/03/04 | First Personal Bank | Bridge Saw Machine |
| 11. | Pyramid Stone Mfg., Inc. | 004113627 | 10/26/99 Continued: 5/25/04 | Stearns Bank NA | Leases |
| 12. | Pyramid Stone Mfg., Inc. | 009735887 | 04/15/05 | First Personal Bank | water filtration equipment |
| 13. | Pyramid Stone Mfg., Inc. | 010065038 | 08/03/05 | First Federal Leasing | polishing machine |
| 14. | Pyramid Stone Mfg., Inc. | 010519527 | 01/03/06 | Great American Finance LLC | Vehicle |

# EXHIBIT D

## Additional Names

None.

# EXHIBIT E

## Equipment List

Also see attached.

| | Borrower | Model | VIN | Owned/Leased |
|---|---|---|---|---|
| 1. | Pyramid Stone Mfg., Inc. | Toyota 7FGCU25 Serial Number 71904 forklift | N/A | Leased from Toyota Financial Services |
| 2. | Pyramid Stone Mfg., Inc. | Toyota 6FGCU45 Serial Number 60387 forklift | N/A | Leased from Toyota Financial Services |
| 3. | Pyramid Stone Mfg., Inc. | Toyota 7FGCU70 Serial Number 60244 forklift | N/A | Leased from Toyota Financial Services |
| 4. | Pyramid Stone Mfg., Inc. | Toyota 6FGCU25 Serial Number 72843 forklift | N/A | Leased from Toyota Financial Services |
| 5. | Pyramid Stone Mfg., Inc. | 1999 Chevrolet C3 500-HD 2002 Doolittle Trailer | 1GBKC34J3XF2 068003 | Leased from Great American Finance LLC |
| 6. | Pyramid Stone Mfg., Inc. | 1995 Dodge RAM 1500 | 3B7HC13Z0SM1 67887 | Owned |
| 7. | Stone Warehouse LLC | 2003 Truck – Chevy – Kodiak | IGBJ7J1E33F506 73 | Leased |
| 8. | Stone Warehouse LLC | 1999 Truck – GMC Chevy – C Series | 1GBKC34F4X40 126015 | Leased |
| 9. | Stone Warehouse LLC | 2002 Trailer – Doolittle | IDGRS18262MO 47662 | Leased |



Pyramid Stone Manufacturing, Inc.
Operating Lease Worksheet
December 31, 2005

Need Contract

| Vendor | Equipment | Monthly $ | Thru |
|---|---|---|---|
| Toyota | Forklift | ▓▓▓▓▓ | 11/30/▓▓ |
| 1st Bank & trust | Porsche | 942.64 | 11/02/▓▓ |
| Paradata | Credit Card Machine | 67.57 | Monthly |
| Great American | Sony Vlao | 138.18 | 05/15/07 |
| GE Capital | Printer | 161.98 | 05/06/08 |
| Chase | Mercedes | 1,135.90 | 04/15/▓▓ |
| GMAC | 02 Trail Blazer | 586.00 | 02/07/▓▓ |
| Leasing Services | Copier | 113.87 | |
| Marlin Leasing | Xerox Printer | 12.44 | |
| Varesources | Xerox Printer/Copier | 88.41 | 05/31/08 |
| Apple Financial | Laptop | 122.58 | 08/20/07 |
| | | 3,565.94 | |

*CARLO*

| Vendor | Equipment | Monthly $ | Thru |
|---|---|---|---|
| 11 S Eisenhower | Building | | |

| Year | Amount |
|---|---|
| 2005 | |
| 2006 | |
| 2007 | |
| 2008 | |
| 2009 | |
| Thereafter | |

| 2004 lease expense | |
|---|---|
| Buildings | 101,596.20 |
| Vehicle | 35,432.18 |
| Equipment | 14,196.58 |
| Total | 151,224.96 |

**Lease Schedule**

*9 Vehicles*
*+ 1 owned*
*10 Vehicles*

*X-*

Pyramid Stone Manufacturing, Inc.
Capital Lease Worksheet
December 31, 2005                                    Need Contract

| Vendor | Equipment | Monthly $ | Thru |
|--------|-----------|-----------|------|
| Financial Pacific L | Bridge Saw | ▇▇▇▇▇ | 09/15/▇▇ |
| One Source Capital | Edge Polishing Machine | ▇▇▇▇▇ | 09/11/▇▇ |
| GAFCO | Bridge Saw | ▇▇▇▇▇ | 06/01/▇▇ |
| One Source Cap | Electric Polisher | ▇▇▇▇▇ | 07/31/▇▇ |
| GAFCO | *Fabrication Mach.* | 832.16 ? | — ✶ |
| GMAC | ▇▇▇▇▇ | ▇▇▇▇▇ | 06/25/▇▇ |
| GMAC | ▇▇▇▇▇ | ▇▇▇▇▇ | 03/20/▇▇ |
| GMAC | ▇▇▇▇▇ | ▇▇▇▇▇ | 10/26/▇▇ |
| GMAC | ▇▇▇▇▇ | ▇▇▇▇▇ | 12/03/▇▇ |
| GMAC | ▇▇▇▇▇ | ▇▇▇▇▇ | 10/20/▇▇ |
| 1st Bank & Trust | ▇▇▇▇▇ | ▇▇▇▇▇ | 11/14/▇▇ |
| GE Capital | Nortel Phones | 253.31 | 07/31/05 |
| | | 9,205.40 | |

| Year | Amount |
|------|--------|
| 2005 | 109,198.25 |
| 2006 | 83,756.24 |
| 2007 | 72,281.64 |
| 2008 | 48,731.24 |
| 2009 | 9,682.92 |
| Thereafter | 0.00 |
| Total payments | 323,650.29 |

| | |
|--|--|
| ✶ GAFCO | 26,404.88 |
| Financial Pacific | 22,037.97 |
| GE Capital | 116.95 |
| Source One | 9,822.99 |
| GMAC 02 Silverado | 1,509.45 |
| GMAC 02 Savana | 2,397.83 |
| GMAC 02 Sierra | 581.09 |

Lease Schedule                                          X-

| | |
|---|---:|
| GMAC 01 Cargo van | 1,894.85 |
| GMAC 02 Sierra | 566.04 |
| 1st Bank 05 Silverado | 3,935.28 |
| | |
| Total Interest | 89,267.33 |

Lease Schedule

X-

# EXHIBIT F

## Indebtedness

See attached.

**Recap of Shareholders Loans**

|  | Per Pyramid's Books | Per Stone's Books | Totals |
|---|---|---|---|
| Carlo | -584,444.87 | -32,130.55 | -616,575.42 |
| Rodrigo | -172,998.58 | -190,900.25 | -363,898.83 |
| Tomas | -40,000.00 | -3,921.88 | -43,921.88 |
| 11 South | -42,117.19 | -177,638.33 | -219,755.52 |
| Totals | -839,560.64 | -404,591.01 | -1,244,151.65 |

Note: Negative (-) is indicating $'s due

11 South, owes Pyramid Stone (as of May 31, 2006) a total of $212,886.30 for amounts disbursed for mainly Leasehold Improvements

# EXHIBIT G

## Shareholders; Subsidiaries

<u>Equityholders of Pyramid Stone</u>:
Rodrigo Biscaya – 50%
Carlo Verissimo – 50%


<u>Equityholders of Stone Warehouse</u>:
Rodrigo Biscaya – 47.5%
Carlo Verissimo – 47.5%
Tomas Orozco – 5%

# EXHIBIT H

## Commercial Tort Claims

None.

# EXHIBIT I

## Closing Checklist

See attached.

## CLOSING CHECKLIST

## LOANS BY RZB FINANCE LLC
## TO
## PYRAMID STONE MFG., INC.
## AND
## STONE WAREHOUSE, LLC

I.    <u>Parties</u>

    A.    RZB Finance LLC ("Lender")
       24 Grassy Plains
       Bethel, Connecticut 06801

    B.    Pyramid Stone Mfg., Inc. ("Pyramid Stone")
       11 S. Eisenhower
       Lombard, Illinois 60148

    C.    Stone Warehouse, LLC ("Stone Warehouse" and collectively with "Pyramid
       Stone", "Borrowers")
       11 S. Eisenhower
       Lombard, Illinois 60148

    D.    11 S. Eisenhower, LLC ("Eisenhower")
       11 S. Eisenhower
       Lombard, Illinois 60148

    E.    Rodrigo Biscaya ("Biscaya")
       14 S. Yorkshire Woods
       Oakbrook, Illinois 60523

    F.    Tomas Orozco ("Orozco")
       6518 McArthur Drive
       Woodbridge, Illinois 60517

    G.    Carlo Verissimo ("Verissimo" and collectively with Biscaya and Orozco,
       "Owners")
       14 S. Yorkshire Woods
       Oakbrook, Illinois 60523

II.    Counsel to Parties

    A.    Lender:

        Goldberg, Kohn, Bell, Black,
           Rosenbloom & Moritz, Ltd. ("GK")
        55 East Monroe Street
        Suite 3700
        Chicago, Illinois  60603
        Telephone:    (312) 201-4000
        Telecopy:     (312) 332-2196
        Attention:    Richard M. Kohn and William A. Starshak

    B.    Borrowers and Owners:

        Much Shelist
        191 North Wacker Drive
        Suite 1800
        Chicago, Illinois  60606
        Telephone:    (312) 521-2477
        Telecopy:     (312) 521-2377
        Attention:    Mitchell Roth

III.    Closing Documents

    A.    Items delivered by, or pertaining to, Borrowers:

        1.    Loan and Security Agreement

        2.    $5,000,000 Revolving Note

        3.    Items with respect to Borrowers' property, liability and credit insurance, as follows:

            a.    Certificates of insurance with respect to property, boiler and machinery, marine, fire and business interruption policies, each showing Lender as lender's loss payee, with lender's loss payable clause in favor of Lender

            b.    Certificates of insurance with respect to liability policies, each showing Lender as additional insured

            c.    Assignment of Proceeds from Business Interruption Insurance Policy as Collateral Security

            d.    Letter re no additional loss payees

4.    Authorization to Disburse Proceeds

5.    Lockbox and Blocked Account Agreement covering Pyramid Stone and Stone Warehouse

6.    Landlord's Agreement for the following locations:

    a.    70, 301, 303 S. Eisenhower, Lombard, Illinois

    b.    11 S. Eisenhower, Lombard, Illinois

7.    UCC financing statement showing Pyramid Stone as debtor, filed with the Secretary of State of Illinois

8.    UCC financing statement showing Stone Warehouse as debtor, filed with the Secretary of State of Illinois

9.    Authorization to pre-file UCC financing statements

10.   Secretary's Certificate of Pyramid Stone as to:

    a.    Articles of Incorporation

    b.    Bylaws

    c.    Incumbency of Officers

    d.    List of Directors and Shareholders

    e.    Resolutions

11.   Certificates of good standing for Pyramid Stone in the state of Illinois and each other state where Pyramid Stone is qualified to do business

12.   Manager's Certificate of Stone Warehouse as to:

    a.    Articles of Organization

    b.    Operating Agreement

    c.    Incumbency of officers

    d.    Resolutions

13.   Certificates of good standing for Stone Warehouse in the state of Illinois and each other state where Stone Warehouse is qualified to do business

14. Initial Borrowing Base Certificate

15. Pyramid Stone Intercompany Note, and Allonge

16. Intercompany Subordination Agreement

B. <u>Items by or pertaining to Eisenhower and Owners</u>:

1. Continuing Unconditional Guaranty

2. Subordination Agreement

3. Pledge Agreement, including stock certificates and assignments separate from certificate

4. UCC financing statement showing Biscaya as debtor, filed with the Secretary of State of Illinois

5. UCC financing statement showing Orozco as debtor, filed with the Secretary of State of Illinois

6. UCC financing statement showing Verissimo as debtor, filed with the Secretary of State of Illinois

7. Eisenhower Second Mortgage

    a. Certified Copy of Eisenhower First Mortgage

    b. Title commitment

    c. Subordination of Lease

8. Verissimo Third Mortgage

    a. Appraisal of residence at 14 S. Yorkshire Woods, Oakbrook, Illinois 60523

    b. Title commitment

C. <u>Other items</u>:

1. Pay-off Letter Royal American Bank

    a. UCC Termination

2. Other pay-off letters/terminations

    a. Eisenhower

3.    Pre-closing search report (UCC, fixtures, tax liens, suits and judgments) for Borrowers, Eisenhower and Owners and updates thereto

4.    Opinion of counsel to Borrower and Owners

D.    <u>Post-Closing items</u>:

1.    Post-filing UCC searches

## EXHIBIT J

### Form of Notice of Borrowing

See attached.

Attention: Ms. Terri Weiner
Vice President
RZB Finance LLC
1133 Avenue of the Americas
New York, New York 10036

Via Fax: 212-391-9670 or
Via E-mail: tweiner@rzbfinance.com

Re: Loan and Security Agreement dated as of June 14, 2006 (the "Loan Agreement")

Dear Sirs/Madams:

Pursuant to section 5 (a) (i) of the Loan and Security Agreement, Stone Warehouse, LLC (the "Borrower") hereby requests a Loan as follows:

| Borrower: | Stone Warehouse, LLC |
|---|---|
| Principal Amount: | $ |
| Borrowing Date: | June 15, 2006 |
| Bank Account to be credited: | Fifth Third Bank Account # |

The Borrower certifies that upon the making of the Loan requested pursuant to this Request for Loan, the aggregate amount of the Loans will not exceed the Maximum Available Revolving Credit Amount.

The Borrower further certifies that, as of the date of this Request for Loan, ** [except to the extent waived by lender in writing] ** (i) the representations and warranties of the Borrower set forth in the Loan Agreement are true and correct as though made on and as of this date, (ii) no Default or Event of Default has occurred, and (iii) all other conditions and requirements as set forth the Loan and Security Agreement are satisfied.

Capitalized terms used herein without definition shall have the meaning set forth in the Loan and Security Agreement.

Very truly yours,

| STONE WAREHOUSE, LLC | STONE WAREHOUSE, LLC |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Signature: _____ | Signature: _____ |

Attention: Ms. Terri Weiner
Vice President
RZB Finance LLC
1133 Avenue of the Americas
New York, New York 10036

Via Fax: 212-391-9670 or
Via E-mail: tweiner@rzbfinance.com

Re: Loan and Security Agreement dated as of June 14, 2006 (the "Loan Agreement")

Dear Sirs/Madams:

Pursuant to section 5 (a) (i) of the Loan and Security Agreement, Pyramid Stone Mfg., Inc. (the "Borrower") hereby requests a Loan as follows:

| Borrower: | Pyramid Stone Mfg., Inc. |
|---|---|
| Principal Amount: | $ |
| Borrowing Date: | June 15, 2006 |
| Bank Account to be credited: | Fifth Third Bank Account # |

The Borrower certifies that upon the making of the Loan requested pursuant to this Request for Loan, the aggregate amount of the Loans will not exceed the Maximum Available Revolving Credit Amount.

The Borrower further certifies that, as of the date of this Request for Loan, ** [except to the extent waived by lender in writing] ** (i) the representations and warranties of the Borrower set forth in the Loan Agreement are true and correct as though made on and as of this date, (ii) no Default or Event of Default has occurred, and (iii) all other conditions and requirements as set forth the Loan and Security Agreement are satisfied.

Capitalized terms used herein without definition shall have the meaning set forth in the Loan and Security Agreement.

Very truly yours,

| PYRAMID STONE MFG., INC. | PYRAMID STONE MFG., INC. |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Signature: _____ | Signature: _____ |

# EXHIBIT K

## Litigation

| Defendant | Jurisdiction | Status | Case Number | Filing Date | Plaintiff | Amount |
|-----------|--------------|--------|-------------|-------------|-----------|--------|
| Pyramid Stone Manufacturing, Inc | Illinois DuPage County | **JUDGMENT APPEARS OPEN AS OF 5/26/06** | R99-108279 | 05/12/99 | Michael Accomando d/b/a Pro Tile Interiors | $1,025.00 |

# Exhibit A-2



December 8, 2006

| | |
|---|---|
| Mr. Carlo Verissimo and Mr. Rodrigo Biscaya<br>Pyramid Stone Mfg., Inc.<br>11 S. Eisenhower Lane<br>Lombard, IL 60148 | Mr. Carlo Verissimo and Mr. Rodrigo Biscaya<br>Stone Warehouse, LLC<br>303 S. Eisenhower Lane<br>Lombard, IL 60148 |

Re: First Amendment to Loan and Security Agreement

Gentlemen:

As a follow up to our discussions, subject to the appropriate approvals within RZB Finance, we agree to provide you with an amendment to the Loan and Security Agreement (the "Agreement") dated June 19, 2006. This will be the First Amendment to the Agreement (the "First Amendment"). You agree that until the amendment is approved by RZB, we have no obligation to close on any portion of the amendment.

As consideration of RZB to enter into this amendment, you agree to pay RZB an Amendment Fee. The Fee shall be paid by Pyramid Stone and Stone Warehouse, immediately upon closing of the First Amendment, in equal amounts of $1,500 each. You agree that the fees will be drawn from the Revolver portion of the Agreement.

Furthermore this First Amendment will not close until RZB receives 2007 and 2008 financial budgets, as required by the Agreement. Also it is stipulated that Stone Warehouse must incur capital expenditures in the amount of no less than $15,000 to restore order to its computer systems by acquiring new hardware and software within no later than 30 days of the closing of the amendment.

If you accept these terms, kindly acknowledge this letter by signing below and returning it to me.

Very truly yours,

Louis T. Marosi

AGREED: Pyramid Stone Mfg., Inc.

By: _____  By: _____
Name:   Carlo Verissimo  Name:   Rodrigo Biscaya

AGREED: Stone Warehouse, LLC

By: _____  By: _____
Name:   Carlo Verissimo  Name:   Rodrigo Biscaya

**FIRST AMENDMENT TO LOAN AND SECURITY AGREEMENT**

This First Amendment to Loan and Security Agreement (herein, the "Amendment") is entered into as of December 14, 2006, by and between RZB FINANCE LLC ("**Lender**"), with an address at 24 Grassy Plain Street, Bethel, Connecticut 06801, PYRAMID STONE MFG., an Illinois corporation, with an address at 11 South Eisenhower, Lombard, Illinois 60148 ("**Pyramid Stone**") and STONE WAREHOUSE, LLC, an Illinois limited liability company with an address at 303 South Eisenhower, Lombard, Illinois 60148 ("**Stone Warehouse**" and collectively with Pyramid Stone, the "**Borrowers**" and each a "**Borrower**").

Whereas, the Borrowers and the Lender are parties to a certain Loan and Security Agreement, dated as of June 19, 2006 (as amended, modified or supplemented from time to time, the "Agreement"). All capitalized terms used herein without definition shall have the same meanings herein as such terms have in the Agreement.

Whereas, the Borrowers have requested that the Lender amend the Agreement so as to (i) increase the concentration limit on PS Accounts Receivables owed by Home Depot, (ii) increase the allowable limit on Eligible PS Tagged Inventory, (iii) consent to re-establish the Pyramid Stone Over Advance to $175,000 as outlined herein, (iv) change the pricing for the Letters of Credit and to incorporate Trade Finance Programs, (v) make certain other changes to the Agreement, all as more fully set forth hereinafter, and the Lender has agreed to do so, all on the terms and conditions hereinafter set forth. Unless specifically amended herein no other terms and conditions of the Agreement are amended or changed.

NOW, THEREFORE, in consideration of any Loans made for the account of Borrower, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each Borrower, the parties agree as follows:

SECTION 1.    AMENDMENTS.

1.1.    The defined term "**Eligible PS Accounts**" is amended. Specifically and only article (x) is changed to now be defined as follow: (x) accounts to the extent that the account debtor's indebtedness to Pyramid Stone exceeds $100,000 (or $675,000 for indebtedness owning by Home Depot and any direct or indirect related entity including but not limited to Expo Center) or a greater credit limit otherwise determined by lender in lender's sole discretion;.

1.2.    The defined term "**PS Revolving Loan Availability**" is amended. Specifically and only article (b)(iii) is changed to now be defined as follows: (iii) the lesser

with respect to Trade Finance Programs and Letters of Credit issued by Lender to purchase Purchase Program Inventory, Borrowers shall pay the fees noted in Exhibit "M" attached hereto. Borrowers shall also pay on demand the normal and customary administrative charges of the issuer of the Letter of Credit for documentation, issuance, amendment, negotiation, transfer, drawings, processing, renewal or extension of any Letter of Credit.

1.7.    Article 13(l) is deleted in its entirety and replaced with the following: **(l)** No Borrower shall declare or pay any dividend or other distribution (whether in cash or in kind) on any class of its stock or other equity securities; provided that so long as no Event of Default exists or would be caused thereby (i) Stone Warehouse may make distributions to its members for income tax purposes if such distributions are approved in writing in advance by Lender and (ii) so long as no Event of Default exists hereunder, Pyramid Stone may make distributions and dividends not to exceed $4,000 in the aggregate in any calendar month to Verissimo for payments on certain home equity loans for Verissimo's residence located at 14 South Yorkshire Woods, Oakbrook, Illinois;

1.8.    Article 18 is deleted in its entirety and replaced with the following: **NOTICE.** All written notices and other written communications with respect to this Agreement shall be sent by ordinary, certified or overnight mail, by telecopy or delivered in person, and in the case of Lender shall be sent to it at 24 Grassy Plain Street, Bethel, Connecticut 06801, Attention: Dan Dobrjanskyj with a copy to 150 North Martingale Road, Suite 840, Schaumburg, Illinois 60173, Attention: Louis T. Marosi, and in the case of any Borrower shall be sent to it at its principal place of business set forth on the first page of this Agreement with a copy to Much Shelist, 191 North Wacker Drive, Suite 1800, Chicago, Illinois, 60606, Attention: Mitchell S. Roth.

Section 2.    Consents.

2.1    Pursuant to the Promissory Note dated June 19, 2006 between PYRAMID STONE MFG., INC. (the "Issuer"), and STONE WAREHOUSE, LLC, (the "Holder"), as a result of certain payments made by the Issuer the principal sum is now Two Hundred Twenty Two Thousand Five Hundred Twenty Five and 51/100 Dollars ($222,525.51). Pyramid Stone agrees that $150,000 of the overadvance will immediately be paid to Stone Warehouse as an additional lump sum payment under the Promissory Note. The Lender consents to this lump sum payment. The Holder consents that no additional payments are owed by the Issuer until the Lender is paid the Pyramid Stone Overadvance. Immediately after the Lender is paid the Pyramid Stone Overadvance, the Issuer agrees to resume payments directly to the Holder commencing on June 8, 2006 in the amount of $7,000.00 and continuing weekly until paid in full.

of (A) $300,000 and (B) eighty-five percent (85%) of Eligible PS Tagged Inventory valued at ninety percent (90%) of actual cost, plus thirty percent (30%), which percentages may be amended from time to time in the sole discretion of the Lender upon the receipt by Lender of appraisals of such Inventory; minus

1.3.    The defined term **"Pyramid Stone Overadvance"** is deleted in its entirety and replaced with the following: **"Pyramid Stone Overadvance"** shall mean as of any date of determination, an Over Advance in excess of the PS Revolving Loan Availability equal to $175,000 on the date hereof, which amount will be reduced by $7,000.00 on each one week anniversary of the date hereof (commencing on December 15, 2006); provided that the Pyramid Stone Overadvance shall be reduced, on a dollar for dollar basis, for each dollar PS Revolving Loan Availability increases as a result of the Inventory of Pyramid Stone being appraised at a value in excess of the appraisal therefor in the AccuVal Appraisal as in effect on the date hereof and without giving effect to any amendments or other modifications thereto.

1.4.    The date of December 29, 2006 referenced in Article 2(a) is changed to June 1, 2007.

1.5.    Exhibit M "Trade Finance and Letters of Credit Programs is now an Exhibit to the Agreement and are attached hereto.

1.6.    Article 3(a) is deleted in its entirety and replaced with the following: (a) Subject to the terms and conditions of this Agreement and the Other Agreements, Lender may, in its sole discretion, from time to time cause to be issued and co-sign for or otherwise guarantee, (i) upon either Borrowers' request, commercial and/or standby Letters of Credit (provided, that the aggregate undrawn face amount of all such Letters of Credit shall at no time exceed $50,000) or (ii) upon Stone Warehouse's request, Trade Finance Programs and commercial Letters of Credit to purchase Purchase Program Inventory (provided, that the aggregate undrawn face amount of all such Trade Finance Programs and Letters of Credit for Purchase Program Inventory shall at no time exceed $700,000). Payments made by the issuer of a Letter of Credit to any Person on account of any Letter of Credit shall be immediately payable by the applicable Borrower without notice, presentment or demand and each Borrower agrees that each payment made by the issuer of a Letter of Credit in respect of a Letter of Credit shall constitute a request by the applicable Borrower for a Loan to reimburse such issuer. In the event such Loan is not advanced by Lender for any reason, such reimbursement obligations (whether owing to the issuer of the Letter of Credit or Lender if Lender is not the issuer) shall become part of the Liabilities hereunder and shall bear interest at the rate then applicable to Revolving Loans until repaid. Borrowers shall remit to Lender a Letter of Credit fee equal to one and one half percent (1.5%) on the aggregate daily stated amount of all Letters of Credit outstanding, which fee shall be payable monthly in advance, except

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above referenced.

RZB FINANCE LLC, as Lender

By: _____

Its: _____
     CHRISTOPH HOEDL
     Group Vice President

By: _____

Its: _____
     DAN DOBRJANSKYJ
     VICE PRESIDENT

PYRAMID STONE MFG., INC., as a Borrower

By: _____

Its: _____

STONE WAREHOUSE, LLC, as a Borrower

By: _____

Its: _____

Rodrigo Biscaya

Carlo Verissimo

Tomas Orozco

# Exhibit M
## Trade Finance and Letters of Credit Programs
## Container Inventory Programs (CIP)
### December 14, 2006

| LC Program Number | Delivery Destination | LC Amount (% of purchase) | Stone Warehouse's Payment Terms | Required LC Reserve against the BBC | RZB effective Advance Rate on the BBC | RZB Fee's |
|---|---|---|---|---|---|---|
| CIP 1 | Stone Warehouse | 100% | Granite (FOB). Upon presentation of the invoice, packing list and bill of lading satisfactory to RZB, RZB will pay the vendor 100% of the purchase amount via an LC. | 44% | 56% | $250.00 LC Fee; $250.00 Amendment Fee |
| CIP 1A | Stone Warehouse | No LC as 100% payment is against the documents | Granite (FOB). Upon presentation of the invoice, packing list and bill of lading satisfactory to RZB, RZB will pay the vendor 100% of the purchase amount via wire transfer. | 44% | 56% | $250.00 Admin. Fee; $250.00 Amendment Fee |
| CIP 2 | Stone Warehouse | 75% | Granite (FOB). Upon presentation of the invoice, packing list and bill of lading satisfactory to RZB, RZB will pay the vendor 75% of the purchase amount via an LC. The 25% balance is paid by Stone Warehouse under open account terms due at no less than 90 days and no more than 120 days from bill of lading. | 19% | 56% | $325.00 LC Fee; $250.00 Amendment Fee |
| CIP 3 | Stone Warehouse | No LC as 75% payment is against the documents | Granite (FOB). Upon presentation of the invoice, packing list and bill of lading satisfactory to RZB, RZB will pay the vendor 75% of the purchase amount via wire transfer. The 25% balance is paid by Stone Warehouse under open account terms due at no less than 90 days and no more than 120 days from bill of lading. | 19% | 56% | $325.00 Admin. Fee; $250.00 Amendment Fee |
| CIP 4 | Stone Warehouse | 50% | Granite (FOB). Upon presentation of the invoice, packing list and bill of lading satisfactory to RZB, RZB will pay the vendor 50% of the purchase amount via LC. The remaining 50% balance is paid by Stone Warehouse under open account terms due at no less than 90 days and no more than 120 days from bill of lading. | 0% | 56% | $275.00 LC Fee; $250.00 Amendment Fee |
| CIP 5 | Stone Warehouse | No LC as 50% payment is against the documents | Granite (FOB). Upon presentation of the invoice, packing list and bill of lading satisfactory to RZB, RZB will pay the vendor 50% of the purchase amount via wire transfer. The 50% balance is paid by Stone Warehouse under open account terms due at no less than 90 days and no more than 120 days from bill of lading. | 0% | 56% | $275.00 Admin. Fee; $250.00 Amendment Fee |

Note:
All programs subject to change at the sole discretion of RZB at any time.
All programs must be covered by Commercial Inland Marine Insurance.
Stone Warehouse is obligated to Pay RZB upon demand, at all times, regardless of any insurance, of any kind.
All terms and conditions of the Loan Agreement continue to apply
Three sets of original documents and three copies of the documents are required on all transactions.

# Exhibit A-3

## SECOND AMENDMENT TO LOAN AND SECURITY AGREEMENT

This Second Amendment to Loan and Security Agreement (herein, the "Second Amendment") is entered into as of March 16, 2007, by and between RZB FINANCE LLC ("**Lender**"), with an address at 24 Grassy Plain Street, Bethel, Connecticut 06801, PYRAMID STONE MFG., an Illinois corporation, with an address at 11 South Eisenhower, Lombard, Illinois 60148 ("**Pyramid Stone**") and STONE WAREHOUSE, LLC, an Illinois limited liability company with an address at 303 South Eisenhower, Lombard, Illinois 60148 ("**Stone Warehouse**" and collectively with Pyramid Stone, the "**Borrowers**" and each a "**Borrower**").

Whereas, the Borrowers and the Lender are parties to a certain Loan and Security Agreement, dated as of June 19, 2006 (as amended, modified or supplemented from time to time, the "Agreement") and a First Amendment to Loan and Security Agreement dated as of December 14, 2007 (as amended, modified or supplemented from time to time, the "Amendment"). All capitalized terms used herein without definition shall have the same meanings herein as such terms have in the Agreement.

Whereas, the Borrowers have requested that the Lender amend the Agreement so as to (i) provide for a specific time period by which Pyramid Stone must pay Stone Warehouse for granite purchases, (ii) consent to re-establish the Pyramid Stone Over Advance to $175,000, all as more fully set forth hereinafter, and the Lender has agreed to do so, all on the terms and conditions hereinafter set forth. Unless specifically amended herein no other terms and conditions of the Agreement are amended or changed.

NOW, THEREFORE, in consideration of any Loans made for the account of Borrower, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each Borrower, the parties agree as follows:

SECTION 1.        SECOND AMENDMENT.

1.1.    Article 12(l)(ii) amended to include the following sentence; Pyramid Stone agrees to pay for any purchase from Stone Warehouse within 45 days from invoice date.

1.2.    The defined term "**Pyramid Stone Overadvance**" is deleted in its entirety and replaced with the following: "**Pyramid Stone Overadvance**" shall mean as of any date of determination, an Over Advance in excess of the PS Revolving Loan Availability equal to $175,000 on the date hereof, which amount will be reduced by $7,000.00 on each one week anniversary of the date hereof

Exhibit M
Trade Finance and Letters of Credit Programs
Container Drop Ship Programs (CDSP)
December 14, 2006

| LC Program Number | Delivery Destination | LC Amount (% of purchase) | Stone Warehouse's Payment Terms | Stone Warehouse's Trade Customer Payment Terms | Required LC Reserve against the BBC | RZB effective Advance Rate on the BBC | RZB Fee's |
|---|---|---|---|---|---|---|---|
| CDSP 10 | Stone Warehouse's Customer | 100% | Granite (FOB). Upon presentation of the of the invoice, packing list and bill of lading satisfactory to RZB, payment is made to vendor. | Stone Warehouse will have received a purchase order from the customer agreeing to the following: Stone Warehouse's customer pays 100% via check or wire transfer directly into Stone Warehouse's lock box (controlled by RZB), upon presentation of an original Stone Warehouse's invoice, an original packing list, and an original bill of lading. No set off's or credits are allowed. Any advance deposit received by Stone Warehouse shall be held by RZB as a reserve against accounts receivables and released from reserve upon payment of the balance by the customer. | No reserve is required since there will be no advance against the RCF and LC payment is made only: (i) upon the presentation of documents, or (ii) RZB will be reimbursed via credit insurance, or (iii) RZB will be reimbursed via Stone Warehouse's Commercial Inland Marine Policy. Any advance deposit received by Stone Warehouse from the customer will be held by RZB as a reserve against accounts receivables and released from reserve upon payment of the balance from the customer. | No advance on the BBC as customer payment is made directly into a Lock Box (controlled by RZB) upon presentation of the documents. RZB is protected by Credit Insurance and by Commercial Inland Marine Insurance. Should an account move to an eligible A/R as defined in the RCF, then as a contingency, the standard 85% advance rate applies, less any deposit received by Stone Warehouse. | $150 LC/Re/ $250 Amend. Fee |
| CDSP 10A | Stone Warehouse's Customer | | Same as Program 10 | Stone Warehouse will have a purchase order from the customer agreeing full payment due either at 30, 60 or 90 days from bill of lading (or any combination thereof; i.e.... 1/3 schedule liquidation) | 15% plus any deposit received from the customer. | 85% advance on the BBC, less any deposit received by Stone Warehouse. | $275 LC/Re/ $250 Amend. Fee |
| CDSP 10B | Stone Warehouse's Customer | No LC as 100% payment is against the documents | Granite (FOB). Upon presentation of the invoice, packing list and bill of lading satisfactory to RZB, RZB will pay the vendor 100% of the purchase amount via wire transfer. | Stone Warehouse will have received a purchase order from the customer agreeing to the following: Stone Warehouse's customer pays 100% via check or wire transfer directly into Stone Warehouse's lock box (controlled by RZB), upon presentation of an original Stone Warehouse's invoice, an original packing list, and an original bill of lading. No set off's or credits are allowed. Any advance deposit received by Stone Warehouse shall be held by RZB as a reserve against accounts receivables and released from reserve upon payment of the balance | 15% plus any deposit received from the customer. | 85% advance on the BBC, less any deposit received by Stone Warehouse. | $325 Admin. Fee/ $250 Amend. Fee |
| CDSP 10C | Stone Warehouse's Customer | No LC as 100% payment is against the documents | Granite (FOB). Upon presentation of the invoice, packing list and bill of lading satisfactory to RZB, RZB will pay the vendor 100% of the purchase amount via wire transfer. | Stone Warehouse will have received a purchase order from the customer agreeing full payment due either at 30, 60 or 90 days from bill of lading (or any combination thereof; i.e.... 1/3 schedule liquidation) | 15% plus any deposit received from the customer. | 85% advance on the BBC, less any deposit received by Stone Warehouse. | $325 Admin. Fee/ $250 Amend. Fee |
| CDSP 11 | Stone Warehouse's Customer | 75% | Granite (FOB). Upon presentation of the invoice, packing list and bill of lading satisfactory to RZB, RZB will pay the vendor 75% of the purchase amount via LC. The remaining 25% balance paid by Stone Warehouse under open account terms that are no less than 90 days and no more than 120 days from bill of lading. | Stone Warehouse will have received a purchase order from the customer agreeing to the following: Stone Warehouse's customer pays 100% via check or wire transfer directly into Stone Warehouse's lock box (controlled by RZB), upon presentation of an original Stone Warehouse's invoice, an original packing list, and an original bill of lading. No set off's or credits are allowed. Any advance deposit received by Stone Warehouse shall be held by RZB as a reserve against accounts receivables and released from reserve upon payment of the balance by the customer. | No reserve is required since RZB is only advancing 75% of the value and the LC payment is made only: (i) upon the presentation of documents, or (ii) RZB will be reimbursed via credit insurance, or (iii) RZB will be reimbursed via Stone Warehouse's Commercial Inland Marine Policy. Any advance deposit received by Stone Warehouse from the customer will be held by RZB as a reserve against accounts receivables and released from reserve upon payment of the balance by the customer. | No advance on the BBC as customer payment is made directly into a Lock Box (controlled by RZB) upon presentation of the documents. RZB is protected by Credit Insurance and by Commercial Inland Marine Insurance. Should an account move to an eligible A/R as defined in the RCF, then as a contingency, the standard 85% advance rate applies, less any deposit received by Stone Warehouse. | $325 LC Re/ $250 Amend. Fee |

| Program | Parties | Terms | Purchase Order Terms | Reserve | Advance | Fee |
|---|---|---|---|---|---|---|
| CDSP 11A | Stone Warehouse/ Customer | Same as Program 11 | Stone Warehouse will have a purchase order from the customer agreeing full payment due either at 30, 60 or 90 days from bill of lading (or any combination thereof. i.e.... 1/3 schedule liquidation) | Same as program 11 | 85% advance on the BBC, less any deposit received by Stone Warehouse. RZB is protected by credit insurance. | $350 LC Fee/ $250 Amend. Fee |
| CDSP 12 | Stone Warehouse/ Customer | No LC as 75% payment is against the documents | Granite (FOB). Upon presentation of the invoice, packing list and bill of lading satisfactory to RZB, RZB will pay the vendor 75% of the purchase amount via LC. The 25% balance is paid by Stone Warehouse under open account terms due at no less than 90 days and no more than 120 days from bill of lading. | Stone Warehouse will have received a purchase order from the customer agreeing to the following: Stone Warehouse's customer pays 100% via check or wire transfer directly into Stone Warehouse's lock box (controlled by RZB), upon presentation of an original Stone Warehouse's invoice, an original packing list, and an original bill of lading. No net offs or credits are allowed. Any advance deposit received by Stone Warehouse shall be held by RZB as a reserve against accounts receivables and released from reserve upon payment of the balance by the customer. | No reserve is required since RZB is only advancing 75% of the value and the payment is made only: (i) upon the presentation of documents, or (ii) RZB will be reimbursed via credit insurance, or (iii) RZB will be reimbursed via Stone Warehouse's Commercial Inland Marine Policy. Any advance deposit received by Stone Warehouse from the customer will be held by RZB as a reserve against accounts receivables and released from reserve upon payment of the balance to the customer. | No advance on the BBC as customer payment is made directly into a Lock Box (controlled by RZB) upon presentation of the documents. RZB is protected by Credit Insurance and by Commercial Inland Marine Insurance. Should an account move to an eligible A/R as defined in the RCF, then as a contingency, the standard 85% advance rate applies, less any deposit received by Stone Warehouse. | $325 Admin. Fee/ $250 Amend. Fee |
| CDSP 12A | Stone Warehouse/ Customer | Same as Program 12 | Stone Warehouse will have a purchase order from the customer agreeing full payment due either at 30, 60 or 90 days from bill of lading (or any combination thereof. i.e.... 1/3 schedule liquidation) | Same as program 12 | 85% advance on the BBC, less any deposit received by Stone Warehouse. RZB is protected by credit insurance. | $350 Admin. Fee/ $250 Amend. Fee |
| CDSP 13 | Stone Warehouse/ Customer | 50% | Granite (FOB). Upon presentation of the invoice, packing list and bill of lading satisfactory to RZB, RZB will pay the vendor 50% of the purchase amount via LC. The remaining 50% balance is paid by Stone Warehouse under open account terms due at no less than 90 days and no more than 120 days from bill of lading. | Stone Warehouse will have received a purchase order from the customer agreeing to the following: Stone Warehouse's customer pays 100% via check or wire transfer directly into Stone Warehouse's lock box (controlled by RZB), upon presentation of an original Stone Warehouse's invoice, an original packing list, and an original bill of lading. No net offs or credits are allowed. Any advance deposit received by Stone Warehouse shall be held by RZB as a reserve against accounts receivables and released from reserve upon payment of the balance by the customer. | No reserve is required since RZB is only advancing 50% of the value and the LC payment is made only: (i) upon the presentation of documents, or (ii) RZB will be reimbursed via credit insurance, or (iii) RZB will be reimbursed via Stone Warehouse's Commercial Inland Marine Policy. Any advance deposit received by Stone Warehouse from the customer will be held by RZB as a reserve against accounts receivables and released from reserve upon payment of the balance to the customer. | No advance on the BBC as customer payment is made directly into a Look Box (controlled by RZB) upon presentation of the documents. RZB is protected by Credit Insurance and by Commercial Inland Marine Insurance. Should an account move to an eligible A/R as defined in the RCF, then as a contingency, the standard 85% advance rate applies, less any deposit received by Stone Warehouse. | $275 LC Fee/ $250 Amend. Fee |
| CDSP 13A | Stone Warehouse/ Customer | Same as Program 13 | Stone Warehouse will have a purchase order from the customer agreeing full payment due either at 30, 60 or 90 days from bill of lading (or any combination thereof. i.e.... 1/3 schedule liquidation) | Same as program 13 | 85% advance on the BBC, less any deposit received by Stone Warehouse. RZB is protected by credit insurance. | $300 LC Fee/ $250 Amend. Fee |
| CDSP 14 | Stone Warehouse/ Customer | No LC as 50% payment is against the documents | Granite (FOB). Upon presentation of the invoice, packing list and bill of lading satisfactory to RZB, RZB will pay the vendor 50% of the purchase amount via wire transfer. The 50% balance is paid by Stone Warehouse under open account terms due at no less than 90 days and no more than 120 days from bill of lading. | Stone Warehouse will have received a purchase order from the customer agreeing to the following: Stone Warehouse's customer pays 100% upon presentation of documents via check or wire transfer directly into Stone Warehouse's lock box (controlled by RZB), upon presentation of an original Stone Warehouse's invoice, an original packing list, such as original bill of lading. No net offs or credits are allowed. Any advance deposit received by Stone Warehouse shall be held by RZB as a reserve against accounts receivables and released from reserve upon payment of the balance by the customer. | No reserve is required since RZB is only advancing 50% of the value and the payment is made only: (i) upon the presentation of documents, or (ii) RZB will be reimbursed via credit insurance, or (iii) RZB will be reimbursed via Stone Warehouse's Commercial Inland Marine Policy. Any advance deposit received by Stone Warehouse from the customer will be held by RZB as a reserve against accounts receivables and released from reserve upon payment of the balance to the customer. | No advance on the BBC as customer payment is made directly into a Look Box (controlled by RZB) upon presentation of the documents. RZB is protected by Credit Insurance and by Commercial Inland Marine Insurance. Should an account move to an eligible A/R as defined in the RCF, then as a contingency, the standard 85% advance rate applies, less any deposit received by Stone Warehouse. | $275 Admin. Fee/ $250 Amend. Fee |

| CDSF 14A | Stone Warehouses' Customer | Same as Program 14 | Stone Warehouse will have a purchase order from the customer agreeing full payment due either at 30, 60 or 90 days from bill of lading (or any combination thereof. i.e.... 1/3 schedule liquidation) | Same as program 14 | 85% advance on the BBC, less any deposit received by Stone Warehouse. RZB is protected by credit insurance. | $300 Admin. Fee/ $250 Annual. Fee |

Note:

All programs subject to change at the sole discretion of RZB at any time
All programs must be covered by Commercial Credit Insurance and Commercial Inland Marine Insurance.
Stone Warehouse is obligated to Pay RZB upon demand, at all times, regardless of any insurance, of any kind.
All terms and conditions of the Loan Agreement continue to apply
Three sets of original documents and three copies of the documents are required on all transactions.

## FIRST AMENDMENT TO PROMISSORY NOTE

FOR VALUE RECEIVED PYRAMID STONE MFG., INC., an Illinois corporation (the "Issuer"), has promised to pay STONE WAREHOUSE, LLC, an Illinois limited liability company (the "Holder"), collectively the "Parties", an amount stated in the Promissory Note dated June 19, 2006.

Whereas the Parties desire to change the payment terms with this First Amendment to Promissory Note dated December 14, 2006.

Whereas the Parties agree and affirm that THE PAYMENT OF THIS PROMISSORY NOTE AND THE RIGHTS OF THE HOLDER OF THIS PROMISSORY NOTE ARE SUBORDINATED TO THE PAYMENT OF SUPERIOR INDEBTEDNESS AND THE RIGHTS OF THE SENIOR LENDER PURSUANT TO THAT CERTAIN INTERCOMPANY SUBORDINATION AGREEMENT, DATED JUNE 19, 2006, AMONG PYRAMID STONE MFG., INC., STONE WAREHOUSE, LLC AND RZB FINANCE LLC.

Whereas, the Parties hereby agree that as a result of prepayments made by the Issuer and received by the Holder, the principal sum is now Two Hundred Twenty Two Thousand Five Hundred Twenty Five and 51/100 Dollars ($222,525.51).

NOW, THEREFORE, for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Issuer and the Holder, the Parties agree as follows: The principal balance due under this Promissory Note will be due and payable with the first payment in the amount of $150,000 due on December 15, 2006. Thereafter in weekly installments of Seven Thousand and 00/100 Dollars ($7,000.00) first due June 15, 2007 until paid in full.

IN WITNESS WHEREOF, the Issuer has executed this Promissory Note as of the date first written above.

PYRAMID STONE MFG., INC., an Illinois
corporation

By: _____

Name: _____CARLO VERISSIMO_____

Title: _____-V. P.-_____


STONE WAREHOUSE, LLC, an Illinois limited
liability company

By: _____

Name: _____RODRIGO N. BISCAYA_____

Title: _____PRESIDENT._____

## SECOND AMENDMENT TO PROMISSORY NOTE

FOR VALUE RECEIVED PYRAMID STONE MFG., INC., an Illinois corporation (the "Issuer"), has promised to pay STONE WAREHOUSE, LLC, an Illinois limited liability company (the "Holder"), collectively the "Parties", an amount stated in the Promissory Note dated June 19, 2006.

Whereas the Parties desire to change the payment terms with this Second Amendment to Promissory Note dated March 16, 2007.

Whereas the Parties agree and affirm that THE PAYMENT OF THIS PROMISSORY NOTE AND THE RIGHTS OF THE HOLDER OF THIS PROMISSORY NOTE ARE SUBORDINATED TO THE PAYMENT OF SUPERIOR INDEBTEDNESS AND THE RIGHTS OF THE SENIOR LENDER PURSUANT TO THAT CERTAIN INTERCOMPANY SUBORDINATION AGREEMENT, DATED JUNE 19, 2006, AMONG PYRAMID STONE MFG., INC., STONE WAREHOUSE, LLC AND RZB FINANCE LLC.

Whereas, the Parties hereby agree that as a result of prepayments made by the Issuer and received by the Holder, the principal sum is now Seventy Two Thousand Five Hundred Twenty Five and 51/100 Dollars ($72,525.51).

Whereas, the parties acknowledge that a specific amount owed to LaSalle Network (the "Vendor") has been compromised. The Vendor has agreed to a reduced and adjusted amount. As a result of the reduction and adjustments the Promissory Note is increased by Seven Thousand Nine Hundred Sixty Four and 89/100 ($7,964.89), to a new total amount of Eighty Thousand Four Hundred Ninety and 40/100 ($80,490.40).

NOW, THEREFORE, for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Issuer and the Holder, the Parties agree as follows:  The principal balance due under this Promissory Note will be due and payable on March 16, 2007 in the amount of $80,490.40.

IN WITNESS WHEREOF, the Issuer has executed this Promissory Note as of the date first written above.

PYRAMID STONE MFG., INC., an Illinois corporation

By: _____ *CARLO VENISSIMO* _____

Name: _____ *CARLO VENISSIMO* _____

Title: _____ *V.P* _____


STONE WAREHOUSE, LLC, an Illinois limited liability company

By: _____

Name: _____

Title: _____

(commencing on March 23, 2007); provided that the Pyramid Stone Overadvance shall be reduced, on a dollar for dollar basis, for each dollar PS Revolving Loan Availability increases as a result of the Inventory of Pyramid Stone being appraised at a value in excess of the appraisal therefor in the AccuVal Appraisal as in effect on the date hereof and without giving effect to any amendments or other modifications thereto.

Section 2.    Consents.

2.1    Pursuant to the Promissory Note dated June 19, 2006 between PYRAMID STONE MFG., INC. (the "Issuer"), and STONE WAREHOUSE, LLC, (the "Holder"), as a result of certain payments made by the Issuer the principal sum is now Eighty Thousand Four Hundred Ninety and 40/100 ($80,490.40). Pyramid Stone agrees that $80,490.40 of the overadvance will immediately be paid to Stone Warehouse as an additional lump sum payment under the Promissory Note. The Lender consents to this lump sum payment. Unless otherwise agreed by the Issuer and the Holder in writing, each acknowledges that upon receipt of this lump sum amount, the Promissory Note is paid in full and no additional Promissory Note payments are owed by the Issuer.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above referenced.

RZB FINANCE LLC, as Lender

By: _____
Its: _____
    **CHRISTOPH HOEDL**
    Group Vice President

By: _____
Its: _____
    SHIRLEY RITCH
    Assistant Vice President

PYRAMID STONE MFG., INC., as a Borrower

By: _____
Its: _____

STONE WAREHOUSE, LLC, as a Borrower

By: _____

Its: _____


_____

Rodrigo Biscaya


_____

Carlo Verissimo


_____

Tomas Orozco

Pyramid Stone Mfg., Inc.
Pyramid Stone Over Advance
Weekly availability/reductions schedule
Effective 03-16-07

**Initial Advance = $175,000**

| Week | | Weekly Reduction | Week Ending Availability |
|---|---|---|---|
| | 16-Mar-07 | | $ 175,000.00 |
| 1 | 23-Mar-07 | $ 7,000.00 | $ 168,000.00 |
| 2 | 30-Mar-07 | $ 7,000.00 | $ 161,000.00 |
| 3 | 6-Apr-07 | $ 7,000.00 | $ 154,000.00 |
| 4 | 13-Apr-07 | $ 7,000.00 | $ 147,000.00 |
| 5 | 20-Apr-07 | $ 7,000.00 | $ 140,000.00 |
| 6 | 27-Apr-07 | $ 7,000.00 | $ 133,000.00 |
| 7 | 4-May-07 | $ 7,000.00 | $ 126,000.00 |
| 8 | 11-May-07 | $ 7,000.00 | $ 119,000.00 |
| 9 | 18-May-07 | $ 7,000.00 | $ 112,000.00 |
| 10 | 25-May-07 | $ 7,000.00 | $ 105,000.00 |
| 11 | 1-Jun-07 | $ 7,000.00 | $ 98,000.00 |
| 12 | 8-Jun-07 | $ 7,000.00 | $ 91,000.00 |
| 13 | 15-Jun-07 | $ 7,000.00 | $ 84,000.00 |
| 14 | 22-Jun-07 | $ 7,000.00 | $ 77,000.00 |
| 15 | 29-Jun-07 | $ 7,000.00 | $ 70,000.00 |
| 16 | 6-Jul-07 | $ 7,000.00 | $ 63,000.00 |
| 17 | 13-Jul-07 | $ 7,000.00 | $ 56,000.00 |
| 18 | 20-Jul-07 | $ 7,000.00 | $ 49,000.00 |
| 19 | 27-Jul-07 | $ 7,000.00 | $ 42,000.00 |
| 20 | 3-Aug-07 | $ 7,000.00 | $ 35,000.00 |
| 21 | 10-Aug-07 | $ 7,000.00 | $ 28,000.00 |
| 22 | 17-Aug-07 | $ 7,000.00 | $ 21,000.00 |
| 23 | 24-Aug-07 | $ 7,000.00 | $ 14,000.00 |
| 24 | 31-Aug-07 | $ 7,000.00 | $ 7,000.00 |
| 25 | 7-Sep-07 | $ 7,000.00 | $ - |

RCF matures 06-14-09

Pyramid Stone Mfg., Inc.
Pyramid Stone Note Payable to Stone Ware
Weekly balance/amortization schedule
Effective 03-16-07

Initial Note Owed = $528,965.47

| Week | Due Date | Date Paid | Weekly Reduction | Week Ending Balance Due |
|---|---|---|---|---|
| Initial Note | 19-Jun-06 | | $ | $ 528,965.47 |
| Misc adj | | | $ 616.76 | $ 528,348.71 |
| Reduction at Closing | 19-Jun-06 | | $ 100,000.00 | $ 428,348.71 |
| Adjustment | 20-Jun-06 | | $ 66,747.36 | $ 361,601.35 |
| Adjustment | 21-Jun-06 | | $ 29,540.62 | $ 332,060.73 |
| | | | $ - | $ 332,060.73 |
| 1 | 23-Jun-06 | | $ - | $ 332,060.73 |
| 2 | 30-Jun-06 | | $ - | $ 332,060.73 |
| 3 | 7-Jul-06 | 7-Jul-06 | $ 3,779.31 | $ 328,281.42 |
| 4 | 14-Jul-06 | 21-Jul-06 | $ 3,779.31 | $ 324,502.11 |
| 5 | 21-Jul-06 | 21-Jul-06 | $ 3,779.31 | $ 320,722.80 |
| 6 | 28-Jul-06 | 27-Jul-06 | $ 3,779.31 | $ 316,943.49 |
| 7 | 4-Aug-06 | 2-Aug-06 | $ 3,779.31 | $ 313,164.18 |
| 8 | 11-Aug-06 | 10-Aug-06 | $ 3,779.31 | $ 309,384.87 |
| 9 | 18-Aug-06 | 17-Aug-06 | $ 50,000.00 | $ 259,384.87 |
| 10 | 25-Aug-06 | 21-Aug-06 | $ 10,404.19 | $ 248,980.68 |
| 11 | 1-Sep-06 | 31-Aug-06 | $ 3,779.31 | $ 245,201.37 |
| 12 | 8-Sep-06 | 11-Sep-06 | $ 3,779.31 | $ 241,422.06 |
| 13 | 15-Sep-06 | 22-Sep-06 | $ 3,779.31 | $ 237,642.75 |
| 14 | 22-Sep-06 | 28-Sep-06 | $ 3,779.31 | $ 233,863.44 |
| 15 | 29-Sep-06 | 3-Oct-06 | $ 3,779.31 | $ 230,084.13 |
| 16 | 6-Oct-06 | 13-Oct-06 | $ 3,779.31 | $ 226,304.82 |
| 17 | 13-Oct-06 | 20-Oct-06 | $ 3,779.31 | $ 222,525.51 |
| 18 | 20-Oct-06 | | $ - | $ 222,525.51 |
| 19 | 27-Oct-06 | | $ - | $ 222,525.51 |
| 20 | 3-Nov-06 | | $ - | $ 222,525.51 |
| 21 | 10-Nov-06 | | $ - | $ 222,525.51 |
| 22 | 17-Nov-06 | | $ - | $ 222,525.51 |
| 23 | 24-Nov-06 | | $ - | $ 222,525.51 |
| 24 | 1-Dec-06 | | $ - | $ 222,525.51 |
| 25 | 12-Dec-06 | | $ 150,000.00 | $ 72,525.51 |
| 26 | 15-Dec-06 | | $ - | $ 72,525.51 |
| 27 | 22-Dec-06 | | $ - | $ 72,525.51 |
| 28 | 29-Dec-06 | | $ - | $ 72,525.51 |
| 29 | 5-Jan-07 | | $ - | $ 72,525.51 |
| 30 | 12-Jan-07 | | $ - | $ 72,525.51 |
| 31 | 19-Jan-07 | | $ - | $ 72,525.51 |
| 32 | 26-Jan-07 | | $ - | $ 72,525.51 |
| 33 | 2-Feb-07 | | $ - | $ 72,525.51 |
| 34 | 9-Feb-07 | | $ - | $ 72,525.51 |
| 35 | 16-Feb-07 | | $ - | $ 72,525.51 |
| 36 | 23-Feb-07 | | $ - | $ 72,525.51 |
| 37 | 2-Mar-07 | | $ - | $ 72,525.51 |
| 38 | 9-Mar-07 | | $ (7,964.89) | $ 80,490.40 |
| 39 | 16-Mar-07 | | $ 80,490.40 | $ 0.00 |

RZB's RCF matures on June 19, 2009

3/7/2007
12:43 PM

# Exhibit A-4

## THIRD AMENDMENT AND
## FORBEARANCE AGREEMENT

This THIRD AMENDMENT AND FORBEARANCE AGREEMENT ("Agreement") dated as of October 19, 2007, is made by and among PYRAMID STONE MFG., an Illinois corporation ("Pyramid Stone"), STONE WAREHOUSE, LLC, an Illinois limited liability company ("Stone Warehouse" and together with Pyramid Stone, the "Borrowers") and RZB FINANCE LLC ("Lender").

## R E C I T A L S:

WHEREAS, Lender and Borrowers have entered into certain financing arrangements pursuant to the Loan and Security Agreement dated as of June 19, 2006, by and among Lender and Borrowers (and as amended hereby, and as the same may have heretofore been or may hereafter be further amended, modified, supplemented, extended, renewed, restated or replaced, the "Loan Agreement");

WHEREAS, as of the date hereof, Borrowers are in default under the Loan Agreement as more particularly described below;

WHEREAS, the circumstances described herein constitute multiple Events of Default under the Loan Agreement and the Other Agreements;

WHEREAS, on September 29, 2007, Stone Warehouse executed that certain Trust Agreement and Assignment for the Benefit of Creditors (the **"Trust Agreement"**), pursuant to which, Stone Warehouse, among other things, assigned its assets to David Abrams, solely in his capacity as assignee;

WHEREAS, Borrowers have requested that Lender forbear from exercising its rights as a result of the Existing Defaults, which are continuing for a period of one week while Pyramid Stone's Consultant (as defined below) prepares certain reports, and that Lender provide further financial accommodations to Borrowers notwithstanding such Existing Defaults; and

WHEREAS, Lender is willing to agree to forbear from exercising certain of its rights and remedies and provide certain other financial accommodations to Borrowers solely for the period and on the terms and conditions specified herein;

NOW, THEREFORE, in consideration of the foregoing, and the respective agreements, warranties and covenants contained herein, the parties hereto agree as follows:

## SECTION 1. DEFINITIONS

1.1.    **Interpretation.**  All capitalized terms used herein (including the recitals hereto) shall have the respective meanings ascribed thereto in the Loan Agreement unless otherwise defined herein.

1.2.    **Additional Definitions.**  As used herein, the following terms shall have the respective meanings given to them below, and the Loan Agreement is hereby amended to include, in addition and not in limitation, each of the following definitions:

(a)    "Existing Defaults" shall mean the Events of Default identified on <u>Exhibit A</u> hereto.

(b)    "Forbearance Agreement" shall mean that certain Third Amendment and Forbearance Agreement dated as of October 19, 2007, by and among Lender and Borrowers, as it may be amended from time to time.

(c)    "Forbearance Period" shall have the meaning set forth in Section 3.2(a) hereof.

## SECTION 2. ACKNOWLEDGMENTS

2.1.    **Acknowledgment of Liabilities.**  Each of the Borrowers hereby acknowledges, confirms and agrees that as of the close of business on September 30, 2007, Borrowers are jointly and severally indebted to Lender in respect of the Liabilities in the principal amount of $2,411,792.26, which includes interest, but excludes (a) attorney fees yet to be billed and (b) the Durkin Group field examination fee in the amount of $6,637.65 for the Pyramid Stone audit. Without limiting the foregoing sentence, and for information purposes only, the amount of $2,411,792.26 consists of: Pyramid Stone - $1,530,512.63 (Principal - $1,508,236.27, Interest - $22,276.36, Other - $0.00) and Stone Warehouse - $881,279.63 (Principal - $847,214.44, Interest - $6,061.21, Attorneys Fees - $23,843.25, Field Examination Fee - $4,160.73).  All such Loans, together with interest accrued and accruing thereon, and all fees, costs, expenses and other charges now or hereafter payable by Borrowers to Lender, are unconditionally owing by Borrowers to Lender, without offset, defense or counterclaim of any kind, nature or description whatsoever.

2.2.    **Acknowledgment of Security Interests.**  Each of the Borrowers hereby acknowledges, confirms and agrees that Lender has and shall continue to have valid, enforceable and perfected first-priority liens upon and security interests in the Collateral heretofore granted to Lender pursuant to the Loan Agreement and the Other Agreements or otherwise granted to or held by Lender, subject only to Permitted Liens.

2.3.    **Binding Effect of Documents.**    Each of the Borrowers hereby acknowledges, confirms and agrees that: (a) each of the Loan Agreement and the Other Agreements to which it is a party has been duly executed and delivered to Lender by each of the Borrowers, and each is and shall remain in full force and effect as of the date hereof except as modified pursuant hereto, (b) the agreements and Liabilities of each of the Borrowers contained in such documents and in this Agreement constitute the legal, valid and binding Liabilities of each of the Borrowers, enforceable against it in accordance with their respective terms, and neither of the Borrowers has a valid defense to the enforcement of such Liabilities, and (c) Lender is and shall be entitled to the rights, remedies and benefits provided for under the Loan Agreement and the Other Agreements and applicable law.

## SECTION 3.  FORBEARANCE IN RESPECT OF EXISTING DEFAULTS

      3.1.      **Acknowledgment of Default.**  Each of the Borrowers hereby acknowledges and agrees that the Existing Defaults have occurred and are continuing, each of which constitutes an Event of Default and entitles Lender to exercise its rights and remedies under the Loan Agreement and the Other Agreements, applicable law or otherwise.  Each of the Borrowers represents and warrants that, as of the date hereof, no other Events of Default exist other than the Existing Defaults.  Each of the Borrowers hereby acknowledges and agrees that Lender has the exercisable right to declare the Liabilities to be immediately due and payable under the terms of the Loan Agreement and the Other Agreements.

      3.2.      **Forbearance.**

      (a)      In reliance upon the representations, warranties and covenants of each of the Borrowers contained in this Agreement, and subject to the terms and conditions of this Agreement and any documents or instruments executed in connection herewith, Lender agrees to forbear from exercising its rights and remedies under the Loan Agreement and the Other Agreements or applicable law in respect of or arising out of the Existing Defaults, for the period (the "Forbearance Period") commencing on the date hereof and ending on the date which is the earlier of: (i) October 26, 2007, or (ii) the occurrence or existence of any Event of Default, other than the Existing Defaults.

      (b)      Upon the termination of the Forbearance Period, the agreement of Lender to forbear shall automatically and without further action terminate and be of no force and effect, it being expressly agreed that the effect of such termination will be to permit Lender to exercise immediately all rights and remedies under the Loan Agreement and the Other Agreements and applicable law, including, but not limited to, (i) ceasing to make any further Loans and (ii) accelerating all of the Liabilities; in each case without any further notice to either Borrower, passage of time or forbearance of any kind.

      3.3.      **No Other Waivers; Reservation of Rights.**

      (a)      Lender has not waived, is not by this Agreement waiving, and has no intention of waiving, any Events of Default which may be continuing on the date hereof or any Events of Default which may occur after the date hereof (whether the same or similar to the Existing Defaults or otherwise), and Lender has not agreed to forbear with respect to any of its rights or remedies concerning any Events of Default (other than, during the Forbearance Period, the Existing Defaults to the extent expressly set forth herein) occurring at any time.

      (b)      Subject to Section 3.2 above (solely with respect to the Existing Defaults), Lender reserves the right, in its discretion, to exercise any or all of its rights and remedies under the Loan Agreement and the Other Agreements as a result of any other Events of Default occurring at any time.  Lender has not waived any of such rights or remedies, and nothing in this Agreement, and no delay on its part in exercising any such rights or remedies, shall be construed as a waiver of any such rights or remedies.

      3.4.      **Additional Events of Default.**  The parties hereto acknowledge, confirm and agree that any misrepresentation by either Borrower, or any failure of either Borrower to

comply with the covenants, conditions and agreements contained in this Agreement, any Other Agreement or in any other agreement, document or instrument at any time executed and/or delivered by either Borrower with, to or in favor of Lender shall constitute an Event of Default under this Agreement, the Loan Agreement and the Other Agreements. In the event any Person, other than Lender, shall at any time exercise for any reason (including, without limitation, by reason of any Existing Defaults, any other present or future Event of Default, or otherwise) any of its rights or remedies against either Borrower or any obligor providing credit support for such Borrowers' obligations to such other Person, or against Borrowers' or such obligor's properties or assets, such event shall constitute an Event of Default hereunder and an Event of Default under the Loan Agreement.

**SECTION 4.  AMENDMENTS**  Subject to the satisfaction of the conditions set forth in Section 7 below, and in reliance on the representations and warranties, covenants and other agreements set forth in this Agreement, the Loan Agreement is hereby amended as follows:

4.1.    The definition of "Stone Warehouse Dilution Percentage" in Section 1 of the Loan Agreement is hereby deleted in its entirety.

4.2.    The definition of "SW Maximum Revolving Loan Facility" in Section 1 of the Loan Agreement is hereby amended and restated as follows:

"**SW Maximum Revolving Loan Facility**" shall mean as of any particular date, the amount that Stone Warehouse owes Lender on that date as reflected in Lender's books and records.

4.3.    The definition of "SW Revolving Loan Availability" in Section 1 of the Loan Agreement is hereby deleted in its entirety.

4.4.    Section 4(a) of the Loan Agreement is hereby amended and restated in its entirety as follows:

"(a)    Pyramid Stone shall pay to Lender interest on the outstanding principal balance of the Loans monthly in arrears on the first day of each month beginning on October 1, 2007, at the per annum rate of four percent (4.00%) plus the Reference Rate. Following the occurrence of an Event of Default (other than an Existing Default under the Forbearance Agreement), Pyramid Stone shall pay to Lender interest on the outstanding principal balance of the Loans at the per annum rate of eight and one-quarter percent (8.25%) plus the Reference Rate. Stone Warehouse shall pay to Lender interest on the outstanding principal balance of the Loans monthly in arrears on the first day of each month beginning on October 1, 2007, at the per annum rate of eight and one-quarter percent (8.25%) plus the Reference Rate."

4.5.    Section 13 of the Loan Agreement is hereby amended and restated in its entirety to add subparagraph (t) thereto as follows:

"(t)    Until the Liabilities are paid in full, no Borrower shall pay any amount or make any distribution on account of any subordinated debt or equity,

including to Bill Mass or Tomas Orozco (other than salary) or their successors or assigns."

4.6.     Section 18 of the Loan Agreement is hereby amended and restated in its entirety as follows:

"18.     **NOTICE.**    All written notices and other written communications with respect to this Agreement shall be sent by ordinary, certified or overnight mail, by telecopy or delivered in person, and in the case of Lender shall be sent to it at 24 Grassy Plain Street, Bethel, Connecticut 06801, Attention:  Christoph Hoedl with a copy to 150 North Martingale Road, Suite 840, Schaumburg, Illinois 60173, Attention:  Louis T. Marosi, and in the case of any Borrower shall be sent to it at its principal place of business set forth on the first page of this Agreement with a copy to Much Shelist, 191 North Wacker Drive, Suite 1800, Chicago, Illinois, 60606, Attention: Mitchell S. Roth."

**SECTION 5.  COVENANTS**  Pyramid Stone covenants as follows, and agrees that its failure to comply with any of the following constitutes an Event of Default hereunder and the Loan Agreement:

5.1.     **Budget**.  With respect to Loans requested by Pyramid Stone to be used during the Forbearance Period, (a) Lender shall only advance Loans in the amount of $100,000 to the extent required to pay those expenses enumerated in the budget provided to Lender and attached hereto as Exhibit B, such Budget to be acceptable to Lender in its sole discretion (as revised from time to time during the Forbearance Period subject to Lender's consent, the "*Budget*") as and when such expenses become due and payable, (b) Pyramid Stone shall maintain strict compliance with the Budget and (c) on or before October 23, 2007, Pyramid Stone shall provide evidence that the Loans provided for herein have been utilized pursuant to the Budget.

5.2.     **Receivable Collections**.  During the Forbearance Period, Pyramid Stone shall collect at least $80,000 of its outstanding accounts receivable and on or before October 25, 2007, provide evidence to Lender of such collections.

5.3.     **Bank Accounts**.  Pyramid Stone shall take reasonable steps to promptly deliver evidence to Lender that all of its accounts at Fifth Third Bank have been closed.

5.4.     **Financial Consultant**.  Pyramid Stone has advised Lender that it has retained Lawrence Manson as its financial consultant (the "*Consultant*").  The parties agree that the Consultant is to prepare and provide a liquidity analysis, accounts receivable collection analysis and 30-day budget to Pyramid Stone and Lender on or before October 25, 2007.

5.5.     **Assignment for the Benefit of Creditors**.  An Event of Default shall occur under this Agreement, the Loan Agreement and the Other Agreements to the extent that the Trust Agreement terminates or the Assignment for the Benefit of Creditors ceases for any reason prior to the sale of Stone Warehouse's assets.

## SECTION 6.  REPRESENTATIONS AND WARRANTIES

Each of the Borrowers hereby represents, warrants and covenants as follows:

6.1.    **Representations in Loan Agreement and the Other Agreements.**  Each of the representations and warranties made by or on behalf of each of the Borrowers to Lender in the Loan Agreement and any of the Other Agreements was true and correct when made, and is, except for the Existing Defaults, true and correct on and as of the date of this Agreement with the same full force and effect as if each of such representations and warranties had been made by each of the Borrowers on the date hereof and in this Agreement.

6.2.    **Binding Effect of Documents.**  This Agreement has been duly authorized, executed and delivered to Lender by each of the Borrowers, is enforceable in accordance with its terms and is in full force and effect.

6.3.    **No Conflict.**  The execution, delivery and performance of this Agreement by each of the Borrowers will not violate any requirement of law or contractual obligation of either Borrower and will not result in or require the creation or imposition of any lien on any of its properties or revenues.

## SECTION 7.  CONDITIONS TO EFFECTIVENESS OF CERTAIN PROVISIONS OF THIS AGREEMENT

The effectiveness of the terms and provisions of Section 3.2 of this Agreement shall be subject to the following:

(a)    Lender shall have received an original of (i) this Agreement, duly authorized, executed and delivered by each of the Borrowers, and (ii) an Acknowledgment, Reaffirmation and Release in the form attached hereto as Exhibit C, duly authorized, executed and delivered by 11 S. Eisenhower, LLC, Rodrigo Biscaya, Tomas Orozco and Carlo Verissimo; and

## SECTION 8.  MISCELLANEOUS

8.1.    **Effect of Agreement.**  Except as modified pursuant hereto, no other changes or modifications to the Loan Agreement and the Other Agreements are intended or implied and in all other respects the Loan Agreement and the Other Agreements hereby are ratified, restated and confirmed by all parties hereto as of the effective date hereof.  To the extent of conflict between the terms of this Agreement and the Loan Agreement and the Other Agreements, the terms of this Agreement shall govern and control.  The Loan Agreement and this Agreement shall be read and construed as one agreement.

8.2.    **Costs and Expenses.**  Each of the Borrowers absolutely and unconditionally agrees to pay to Lender, on demand by Lender at any time, whether or not all or any of the transactions contemplated by this Agreement are consummated: all reasonable fees and disbursements of any counsel to Lender in connection with the preparation, negotiation, execution, or delivery of this Agreement and any agreements contemplated hereby and expenses which shall at any time be incurred or sustained by Lender or any participant of Lender or any of their respective directors, officers, employees or agents as a consequence of or in any way in connection with the

preparation, negotiation, execution, or delivery of this Agreement and any agreements contemplated hereby.

      8.3.    **Further Assurances.**  At Borrowers' expense, the parties hereto shall execute and deliver such additional documents and take such further action as may be reasonably necessary or desirable to effectuate the provisions and purposes of this Agreement.

      8.4.    **Successors and Assigns.**  This Agreement shall be binding upon and inure to the benefit of each of the parties hereto and their respective successors and assigns.

      8.5.    **Survival of Representations and Warranties.**  All representations and warranties made in this Agreement or any other document furnished in connection with this Agreement shall survive the execution and delivery of this Agreement and such other documents, and no investigation by Lender or any closing shall affect the representations and warranties or the right of Lender to rely upon them.

      8.6.        **Release.**

      (a)    In consideration of the agreements of Lender contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the Borrowers, on behalf of itself and its successors, assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (the "Releasors"), hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Lender and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Lender and all such other Persons being hereinafter referred to collectively as the "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every kind and nature, known or unknown, suspected or unsuspected, at law or in equity, which each of the Releasors may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the date of this Agreement, including, without limitation, for or on account of, or in relation to, or in any way in connection with this Agreement, the Loan Agreement or any of the Other Agreements or transactions hereunder or thereunder or any "lender liability" type claim.

      (b)    Each of the Borrowers, on its behalf and the Releasors, understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

      (c)    Each of the Borrowers, on its behalf and the Releasors, agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the release set forth above.

8.7.    **Covenant Not to Sue.** Each of the Borrowers, on behalf of itself and the Releasors, hereby absolutely, unconditionally and irrevocably covenants and agrees with and in favor of each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Claim released, remised and discharged by each of the Borrowers pursuant to Section 8.6 above. If either Borrower or any of their successors, assigns or other legal representatives violates the foregoing covenant, each of the Borrowers, for itself and its successors, assigns and legal representatives, agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

8.8.    **Severability.** Any provision of this Agreement held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Agreement.

8.9.    **Reviewed by Attorneys.** Each of the Borrowers represents and warrants to Lender that it (a) understands fully the terms of this Agreement and the consequences of the execution and delivery of this Agreement, (b) has been afforded an opportunity to discuss this Agreement with, and have this Agreement reviewed by, such attorneys and other persons as either Borrower may wish and (c) has entered into this Agreement and executed and delivered all documents in connection herewith of its own free will and accord and without threat, duress or other coercion of any kind by any Person. The parties hereto acknowledge and agree that neither this Agreement nor the other documents executed pursuant hereto shall be construed more favorably in favor of one than the other based upon which party drafted the same, it being acknowledged that all parties hereto contributed substantially to the negotiation and preparation of this Agreement and the other documents executed pursuant hereto or in connection herewith.

8.10.    **Governing Law: Consent to Jurisdiction and Venue.** EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE LOAN AGREEMENT AND ANY OF THE OTHER AGREEMENTS, THIS AGREEMENT, THE LOAN AGREEMENT AND THE OTHER AGREEMENTS AND THE RIGHTS AND LIABILITIES OF THE PARTIES HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES. EACH OF THE BORROWERS HEREBY CONSENTS AND AGREES THAT THE STATE OR FEDERAL COURTS LOCATED IN CHICAGO, ILLINOIS SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN BORROWERS AND LENDER PERTAINING TO THIS AGREEMENT, THE LOAN AGREEMENT OR ANY OF THE OTHER AGREEMENTS OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT, THE LOAN AGREEMENT OR ANY OF THE OTHER AGREEMENTS; PROVIDED, THAT LENDER AND BORROWERS ACKNOWLEDGE THAT ANY APPEALS FROM THOSE COURTS MAY HAVE TO BE HEARD BY A COURT LOCATED OUTSIDE OF ILLINOIS; AND FURTHER PROVIDED, THAT NOTHING IN THIS AGREEMENT SHALL BE DEEMED OR OPERATE TO PRECLUDE LENDER FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO COLLECT THE LIABILITIES, TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE LIABILITIES, OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF LENDER. EACH OF THE BORROWERS EXPRESSLY SUBMITS AND CONSENTS IN

ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND EACH OF THE BORROWERS HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. EACH OF THE BORROWERS HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS ISSUED IN ANY SUCH ACTION OR SUIT AND AGREES THAT SERVICE OF SUCH PROCESS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO BORROWERS AT THE ADDRESS SET FORTH IN THE LOAN AGREEMENT AND THAT SERVICE SO MADE SHALL BE DEEMED COMPLETED UPON THE EARLIER OF BORROWERS' ACTUAL RECEIPT THEREOF OR THREE (3) DAYS AFTER THE SAME HAS BEEN POSTED.

      8.11.    **Mutual Waiver of Jury Trial.**  THE PARTIES HERETO WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING BROUGHT TO RESOLVE ANY DISPUTE, WHETHER ARISING IN CONTRACT, TORT, OR OTHERWISE AMONG LENDER AND BORROWERS ARISING OUT OF, CONNECTED WITH, RELATED OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THIS AGREEMENT, THE LOAN AGREEMENT OR ANY OF THE OTHER AGREEMENTS OR THE TRANSACTIONS RELATED THERETO.

      8.12.    **Counterparts.**  This Agreement may be executed in any number of counterparts, but all of such counterparts shall together constitute but one and the same agreement.

8.11.    **Mutual Waiver of Jury Trial.** THE PARTIES HERETO WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING BROUGHT TO RESOLVE ANY DISPUTE, WHETHER ARISING IN CONTRACT, TORT, OR OTHERWISE AMONG LENDER AND BORROWERS ARISING OUT OF, CONNECTED WITH, RELATED OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THIS AGREEMENT, THE LOAN AGREEMENT OR ANY OF THE OTHER AGREEMENTS OR THE TRANSACTIONS RELATED THERETO.

8.12.    **Counterparts.** This Agreement may be executed in any number of counterparts, but all of such counterparts shall together constitute but one and the same agreement.

IN WITNESS WHEREOF, this Agreement is executed and delivered as of the day and year first above written.

PYRAMID STONE MFG.

By _____
Name _____ C H A L O   V E M S S I N O _____
Title _____ V.  P. _____

STONE WAREHOUSE, LLC

By _____
Name _____
Title _____ Rodrigo Breye. _____

RZB FINANCE LLC

By _____
Name _____
Title _____

RZB FINANCE LLC

By _____
Name _____
Title _____

-14-

IN WITNESS WHEREOF, this Agreement is executed and delivered as of the day and year first above written.

PYRAMID STONE MFG.

By _____
Name _____
Title _____

STONE WAREHOUSE, LLC

By _____
Name _____
Title _____

RZB FINANCE LLC

By _____
Name     CHRISTOPH HOEBL
Title      Group Vice President

RZB FINANCE LLC

By _____
Name     JOHN A. VALISKA
Title      First Vice President

-15-

**EXHIBIT A**
to
**THIRD AMENDMENT AND FORBEARANCE AGREEMENT**

The Existing Defaults arise under:

(a) subsection 15(b) of the Loan Agreement as a result of the default (i) by Pyramid Stone under subsection 13(b)(i) of the Loan Agreement for failure to deliver the monthly financial information required by such subsection for the month ended April 30, 2007, (ii) by each Borrower under subsection 13(b)(ii) of the Loan Agreement for failure to deliver the annual financial information required by such section for the fiscal year ended December 31, 2006, (iii) by Stone Warehouse under subsection 14(a) of the Loan Agreement for failure to comply with the maximum leverage ratio set forth therein for the periods ended September 30, 2006, December 31, 2006 and March 31, 2007, (iv) by Pyramid Stone under subsection 14(a) of the Loan Agreement for failure to comply with the maximum leverage ratio set forth therein for the period ended September 30, 2006, (v) by each Borrower under subsection 14(b) of the Loan Agreement for failure to comply with the maximum account dilution percentage set forth therein for the periods ended December 31, 2006, and March 31, 2007, (vi) by each Borrower under subsection 14(d) of the Loan Agreement for failure to comply with the maximum account turnover time periods set forth therein for the periods ended December 31, 2006, and March 31, 2007, and (vii) by Stone Warehouse under subsection 14(e) of the Loan Agreement for failure to comply with the minimum inventory turnover ratio set forth therein for the periods ended December 31, 2006, and March 31, 2007; and

(b) subsection 15(n) of the Loan Agreement as a result of a material adverse change in the business, assets and financial condition of Stone Warehouse.

## EXHIBIT B
### to
### THIRD AMENDMENT AND FORBEARANCE AGREEMENT

| | | |
|---|---|---|
| **Payroll and** | | |
| **Payroll Taxes** | | up to $90,000 |
| **Consultant** | Week of 10-22-07 | 5,000 |
| | Amt needed to get slabs in from Stone Design | |
| | which will allow us to complete jobs and collect | up to |
| **Materials** | approx $40,000 | 22,000.00 |

**EXHIBIT C**
**to**
**THIRD AMENDMENT AND FORBEARANCE AGREEMENT**

**ACKNOWLEDGMENT, REAFFIRMATION AND RELEASE**

Reference is hereby made to that certain Loan and Security Agreement (as amended, restated, supplemented or modified from time to time, the "Loan Agreement") dated as of June 19, 2006, by and between RZB Finance LLC ("Lender"), Pyramid Stone Mfg. ("Pyramid Stone"), and Stone Warehouse, LLC ("Stone Warehouse" and together with Pyramid Stone, "Borrowers"). Unless defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Loan Agreement.

Each of the undersigned hereby (a) represents and warrants to Lender that the execution, delivery, and performance of this Acknowledgment, Reaffirmation and Release are, where applicable, within its corporate or organizational powers, have been duly authorized by all necessary corporate or other organizational powers or action, and are not in contravention of any law, rule, or regulation, or any order, judgment, decree, writ, injunction, or award of any arbitrator, court, or governmental authority, or of the terms of its charter or bylaws, or of any contract or undertaking to which it is a party or by which any of its properties is or may be bound or affected; (b) acknowledges and reaffirms its obligations, if any, owing to Lender under the Loan Agreement and each of the Other Agreements to which it is a party and (c) acknowledges, confirms and agrees that as of the close of business on September 30, 2007, Borrowers are jointly and severally indebted to Lender in respect of the Liabilities in the amount of $2,411,792.26, which includes interest, but excludes attorneys fees yet to be billed and the Durkin Group field examination fee in the amount of $6,637.65 for the Pyramid Stone audit.

Each of the undersigned (a) on behalf of itself and its successors, assigns, and its heirs, successors, assigns, present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives ("Releasors"), hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Lender, its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Lender and all such other Persons being hereinafter referred to collectively as the "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every kind and nature, known or unknown, suspected or unsuspected, at law or in equity, which the Releasors may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the date of this Agreement, including, without limitation, for or on account of, or in relation to, or in any way in connection with this agreement, the Loan Agreement, or any of the Other Agreements or transactions hereunder or thereunder or any "lender liability" type claim; (b) understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in

breach of the provisions of such release; and (c) agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the release set forth above. The foregoing release is not applicable to any claim which first arises after the date of this agreement to the extent of acts or omissions of the Releasee after the date hereof.

The undersigned, on behalf of itself and each of the Releasors, hereby absolutely, unconditionally and irrevocably, covenants and agrees with and in favor of each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Claim released, remised and discharged by such undersigned pursuant to the release set forth above.  If the undersigned or any of its successors, assigns or other legal representatives violates the foregoing covenant, the undersigned, for itself and each of the Releasors, agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

**[signature on following page]**

This Acknowledgment, Reaffirmation and Release is made this _19th_ day of October, 2007.

**11 S. EISENHOWER, LLC**

_____

**RODRIGO BISCAYA**

_____

**TOMAS OROZCO**

_____

**CARLO VERISSIMO**

_____

# Exhibit A-5

## FIRST AMENDMENT TO FORBEARANCE AGREEMENT

This First Amendment to Forbearance Agreement (the "*Amendment*") dated as of October 26, 2007, is made by and among PYRAMID STONE MFG., an Illinois corporation ("Pyramid Stone"), STONE WAREHOUSE, LLC, an Illinois limited liability company ("Stone Warehouse" and together with Pyramid Stone, the "Borrowers") and RZB FINANCE LLC ("Lender").

# R E C I T A L S :

WHEREAS, Lender and Borrowers have entered into certain financing arrangements pursuant to the Loan and Security Agreement dated as of June 19, 2006, by and among Lender and Borrowers (and as amended hereby, and as the same may have heretofore been or may hereafter be further amended, modified, supplemented, extended, renewed, restated or replaced, the "Loan Agreement");

WHEREAS, Lender and Borrowers entered into that certain Third Amendment and Forbearance Agreement dated October 19, 2007 (the "*Forbearance Agreement*") and capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Forbearance Agreement;

WHEREAS, Borrowers have requested that Lender continue to forbear from exercising its rights as a result of the Existing Defaults, which are continuing, and that Lender provide further financial accommodations to Borrowers notwithstanding such Existing Defaults;

WHEREAS, Lender is willing to agree to continue to forbear from exercising certain of its rights and remedies and provide certain other financial accommodations to Borrowers solely for the period and on the terms and conditions specified herein;

NOW, THEREFORE, in consideration of the foregoing, and the respective agreements, warranties and covenants contained herein, the parties hereto agree as follows:

**SECTION 1.**         **AMENDMENT TO FORBEARANCE AGREEMENT**

1.1.    The definition of "Exhibit Defaults" in Section 1.2(a), and Exhibit A, of the Forbearance Agreement are hereby amended to add the following Event of Default: "(c) subsection 15(b) of the Loan Agreement as a result of the default by Pyramid Stone under subsection 13(b)(i) of the Loan Agreement for failure to deliver the monthly financial information required by such subsection for the month ended September 30, 2007."

1.2.    Section 3.2(a) of the Forbearance Agreement is hereby amended by deleting the reference to "October 26, 2007" therein and inserting "November 5, 2007" in lieu thereof.

1.3.    Section 5.1 of the Forbearance Agreement is hereby amended and restated in its entirety as follows:

"**5.1  Budget.**  With respect to Loans requested by Pyramid Stone to be used during the Forbearance Period, (a) Lender shall only advance Loans

in the amount of $100,000 to the extent required to pay those expenses enumerated in the budget provided to Lender and attached hereto as Exhibit B, such Budget to be acceptable to Lender in its sole discretion (as revised from time to time during the Forbearance Period subject to Lender's consent, the "*Budget*") as and when such expenses become due and payable, (b) Pyramid Stone shall maintain strict compliance with the Budget and (c) on or before November 2, 2007, Pyramid Stone shall provide evidence that the Loans provided for herein have been utilized pursuant to the Budget."

1.4.    Section 5.2 of the Forbearance Agreement is hereby amended and restated in its entirety as follows:

"**5.2    Receivable Collections.**  During the Forbearance Period, Pyramid Stone shall collect at least $100,000 of its outstanding accounts receivable and on or before November 2, 2007, provide evidence to Lender of such collections."

1.5.    Section 5 of the Forbearance Agreement is hereby amended to add Subsection 5.6 therein as follows:

"**5.6    Reporting**.  On or before November 2, 2007, Pyramid Stone shall provide Lender (a) a chart showing sales for a three-week period through the week ending October 26, 2007 and (b) an inventory count and costing, provided that a representative of Lender shall be present."

## SECTION 2.    REPRESENTATIONS AND WARRANTIES

Each of the Borrowers hereby represents, warrants and covenants as follows:

2.1.    **Representations in Loan Agreement and the Other Agreements.**  Each of the representations and warranties made by or on behalf of each of the Borrowers to Lender in the Loan Agreement and any of the Other Agreements was true and correct when made, and is, except for the Existing Defaults, true and correct on and as of the date of this Amendment with the same full force and effect as if each of such representations and warranties had been made by each of the Borrowers on the date hereof and in this Amendment.

2.2.    **Representations in this Amendment.**  A breach of any of the representations and warranties made by or on behalf of each of the Borrowers to Lender in this Amendment shall constitute a default and an Event of Default under the Loan Agreement and the Other Agreements.

2.3.    **Binding Effect of Documents.**   This Amendment has been duly authorized, executed and delivered to Lender by each of the Borrowers, is enforceable in accordance with its terms and is in full force and effect.

2.4.    **No Conflict.**  The execution, delivery and performance of this Amendment by each of the Borrowers will not violate any requirement of law or contractual obligation of either

-2-

Borrower and will not result in or require the creation or imposition of any lien on any of its properties or revenues.

## SECTION 3.  CONDITIONS TO EFFECTIVENESS

The effectiveness of this Amendment shall be subject to the following conditions precedent, each in form and substance satisfactory to Lender:

3.1.    receipt by Lender of an original of this Amendment, duly authorized, executed and delivered by Borrowers and Lender;

3.2.    receipt by Lender of an original of the Reaffirmation and Release attached to this Amendment as Exhibit B, duly authorized, executed and delivered by 11 S. Eisenhower, LLC, Rodrigo Biscaya, Tomas Orozco and Carlo Verissimo; and

3.3.    no default or Event of Default other than the Existing Defaults shall have occurred and be continuing.

## SECTION 4.  MISCELLANEOUS

4.1.    **Effect of Amendment.**  Except as modified pursuant hereto, no other changes or modifications to the Loan Agreement or any of the Other Agreements are intended or implied and in all other respects the Loan Agreement and the Other Agreements hereby are ratified, restated and confirmed by all parties hereto as of the effective date hereof.  To the extent of conflict between the terms of this Amendment and Loan Agreement or any of the Other Agreements, the terms of this Amendment shall govern and control.

4.2.    **Costs and Expenses.**  Each of the Borrowers absolutely and unconditionally agrees to pay to Lender, on demand by Lender at any time, whether or not all or any of the transactions contemplated by this Amendment are consummated: (a) all reasonable fees and disbursements of any counsel to Lender in connection with the preparation, negotiation, execution, or delivery of this Amendment and any agreements contemplated hereby and (b) reasonable expenses, which shall at any time be incurred or sustained by Lender or any of its directors, officers, employees or agents as a consequence of or in any way in connection with the preparation, negotiation, execution, or delivery of this Amendment and any agreements contemplated hereby.  Nothing in this Section 4.2 shall in any way limit the obligations of Borrowers to pay to Lender any and all costs, fees and expenses pursuant to the terms of the Loan Agreement.

4.3.    **Further Assurances.**  At Borrowers' expense, the parties hereto shall execute and deliver such additional documents and take such further action as may be necessary or desirable to effectuate the provisions and purposes of this Amendment.

4.4.    **Successors and Assigns.**  This Amendment shall be binding upon and inure to the benefit of each of the parties hereto and their respective successors and assigns.

4.5.    **Survival of Representations and Warranties.**  All representations and warranties made in this Amendment or any other document furnished in connection with this Amendment shall survive the execution and delivery of this Amendment and the other documents, and no

investigation by Lender or any closing shall affect the representations and warranties or the right of Lender to rely upon them.

    4.6.    **Release.**

    (a)    In consideration of the agreements of Lender contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the Borrowers, on behalf of itself and its successors, assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (the "Releasors"), hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Lender and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Lender and all such other Persons being hereinafter referred to collectively as the "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every kind and nature, known or unknown, suspected or unsuspected, at law or in equity, which each of the Releasors may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the date of this Amendment, including, without limitation, for or on account of, or in relation to, or in any way in connection with this Amendment, the Loan Agreement or any of the Other Agreements or transactions hereunder or thereunder or any "lender liability" type claim.

    (b)    Each of the Borrowers, on its behalf and the Releasors, understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

    (c)    Each of the Borrowers, on its behalf and the Releasors, agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the release set forth above.

    4.7.    **Covenant Not to Sue.** Each of the Borrowers, on behalf of itself and the Releasors, hereby absolutely, unconditionally and irrevocably covenants and agrees with and in favor of each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Claim released, remised and discharged by each of the Borrowers pursuant to Section 4.6 above. If any Releasor violates the foregoing covenant, each of the Borrowers, on behalf of itself and the Releasors, agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

    4.8.    **Severability.** Any provision of this Amendment held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Amendment.

4.9.   **Reviewed by Attorneys.**  Each of the Borrowers represents and warrants to Lender that it (a) understands fully the terms of this Amendment and the consequences of the execution and delivery of this Amendment, (b) has been afforded an opportunity to discuss this Amendment with, and have this Amendment reviewed by, such attorneys and other persons as either Borrower may wish and (c) has entered into this Amendment and executed and delivered all documents in connection herewith of its own free will and accord and without threat, duress or other coercion of any kind by any Person.  The parties hereto acknowledge and agree that neither this Amendment nor the other documents executed pursuant hereto shall be construed more favorably in favor of one than the other based upon which party drafted the same, it being acknowledged that all parties hereto contributed substantially to the negotiation and preparation of this Amendment and the other documents executed pursuant hereto or in connection herewith.

4.10.   **Governing Law: Consent to Jurisdiction and Venue.**  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE LOAN AGREEMENT AND ANY OF THE OTHER AGREEMENTS, THIS AMENDMENT, THE LOAN AGREEMENT AND THE OTHER AGREEMENTS AND THE RIGHTS AND LIABILITIES OF THE PARTIES HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.   EACH OF THE BORROWERS HEREBY CONSENTS AND AGREES THAT THE STATE OR FEDERAL COURTS LOCATED IN CHICAGO, ILLINOIS SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN BORROWERS AND LENDER PERTAINING TO THIS AMENDMENT, THE LOAN AGREEMENT OR ANY OF THE OTHER AGREEMENTS OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AMENDMENT, THE LOAN AGREEMENT OR ANY OF THE OTHER AGREEMENTS; PROVIDED, THAT LENDER AND BORROWERS ACKNOWLEDGE THAT ANY APPEALS FROM THOSE COURTS MAY HAVE TO BE HEARD BY A COURT LOCATED OUTSIDE OF ILLINOIS; AND FURTHER PROVIDED, THAT NOTHING IN THIS AMENDMENT SHALL BE DEEMED OR OPERATE TO PRECLUDE LENDER FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO COLLECT THE LIABILITIES, TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE LIABILITIES, OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF LENDER.   EACH OF THE BORROWERS EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND EACH OF THE BORROWERS HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. EACH OF THE BORROWERS HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS ISSUED IN ANY SUCH ACTION OR SUIT AND AGREES THAT SERVICE OF SUCH PROCESS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO BORROWERS AT THE ADDRESS SET FORTH IN THE LOAN AGREEMENT AND THAT SERVICE SO MADE SHALL BE DEEMED COMPLETED UPON THE EARLIER OF BORROWERS' ACTUAL RECEIPT THEREOF OR THREE (3) DAYS AFTER THE SAME HAS BEEN POSTED.

4.11.  **Mutual Waiver of Jury Trial.**  THE PARTIES HERETO WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING BROUGHT TO RESOLVE ANY DISPUTE, WHETHER ARISING IN CONTRACT, TORT, OR OTHERWISE AMONG LENDER AND BORROWERS ARISING OUT OF, CONNECTED WITH, RELATED OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THIS AMENDMENT, THE LOAN AGREEMENT OR ANY OF THE OTHER AGREEMENTS OR THE TRANSACTIONS RELATED THERETO.

4.12.  **Counterparts.**  This Amendment may be executed in any number of counterparts, but all of such counterparts shall together constitute but one and the same agreement.

**[CONTINUED ON NEXT PAGE]**

IN WITNESS WHEREOF, this Amendment is executed and delivered as of the day and year first above written.

PYRAMID STONE MFG.

By _____

Name _____ CARLO VERICSIMO _____

Title _____ V. D _____

STONE WAREHOUSE, LLC

By _____

Name _____ RODRIGO BISCOLA _____

Title _____ President _____

RZB FINANCE LLC

By _____

Name _____

Title _____

RZB FINANCE LLC

By _____

Name _____

Title _____

Glenview Consent

IN WITNESS WHEREOF, this Amendment is executed and delivered as of the day and year first above written.

PYRAMID STONE MFG.

By _____
Name _____
Title _____

STONE WAREHOUSE, LLC

By _____
Name _____
Title _____

RZB FINANCE LLC

By _____
Name _____
Title _____
        CHRISTOPH HOEDL
        Group Vice President

RZB FINANCE LLC

By _____
Name _____
Title _____
        RANDALL ABRAMS
        Vice President

Glenview Consent

**EXHIBIT A**
**to**
**FIRST AMENDMENT TO FORBEARANCE AGREEMENT**

| | |
|---|---:|
| **Mortgage** | up to $8,500 |
| **Materials** | up to $35,000 |
| **Payroll and Payroll Taxes** | up to $36,500 |
| **Vendor Payments** | up to $15,000 |
| **Consultant** | $5,000 |

**EXHIBIT B**
to
**FIRST AMENDMENT TO FORBEARANCE AGREEMENT**

**ACKNOWLEDGMENT, REAFFIRMATION AND RELEASE**

Reference is hereby made to that certain Loan and Security Agreement (as amended, restated, supplemented or modified from time to time, the "Loan Agreement") dated as of June 19, 2006, by and between RZB Finance LLC ("Lender"), Pyramid Stone Mfg. ("Pyramid Stone"), and Stone Warehouse, LLC ("Stone Warehouse" and together with Pyramid Stone, "Borrowers"). Unless defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Loan Agreement.

Each of the undersigned hereby (a) represents and warrants to Lender that the execution, delivery, and performance of this Acknowledgment, Reaffirmation and Release are, where applicable, within its corporate or organizational powers, have been duly authorized by all necessary corporate or other organizational powers or action, and are not in contravention of any law, rule, or regulation, or any order, judgment, decree, writ, injunction, or award of any arbitrator, court, or governmental authority, or of the terms of its charter or bylaws, or of any contract or undertaking to which it is a party or by which any of its properties is or may be bound or affected; (b) acknowledges and reaffirms its obligations, if any, owing to Lender under the Loan Agreement and each of the Other Agreements to which it is a party and (c) acknowledges, confirms and agrees that as of the close of business on September 30, 2007, Borrowers are jointly and severally indebted to Lender in respect of the Liabilities in the amount of $2,411,792.26, which includes interest, but excludes attorneys fees yet to be billed and the Durkin Group field examination fee in the amount of $6,637.65 for the Pyramid Stone audit.

Each of the undersigned on behalf of itself and its successors, assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (the "Releasors"), (a) hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Lender and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Lender and all such other Persons being hereinafter referred to collectively as the "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every kind and nature, known or unknown, suspected or unsuspected, at law or in equity, which each of the Releasors may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the date of this Amendment, including, without limitation, for or on account of, or in relation to, or in any way in connection with this Amendment, the Loan Agreement or any of the Other Agreements or transactions hereunder or thereunder or any "lender liability" type claim; understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in

breach of the provisions of such release; and agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the release set forth above. The foregoing release is not applicable to any claim which first arises after the date of this agreement to the extent of acts or omissions of the Releasee after the date hereof.

Each of the undersigned, on behalf of itself and the Releasors, hereby absolutely, unconditionally and irrevocably covenants and agrees with and in favor of each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Claim released, remised and discharged by such undersigned pursuant to the release set forth above. If the undersigned or any Releasor violates the foregoing covenant, each of the undersigned, on behalf of itself and the Releasors, agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

**[signature on following page]**

This Acknowledgment, Reaffirmation and Release is made this 26th day of October, 2007.

**11 S. EISENHOWER, LLC**

_____

**RODRIGO BISCAYA**

_____

**TOMAS OROZCO**

_____

**CARLO VERISSIMO**

_____

-11-